BREAUX, C. J.
Plaintiff instituted this suit for $73,620.10 and interest, and another sum of $2,000, “cost of a blowpipe.”
He entered into a contract with defendant on the 19th day of November, 1906, in accordance with whose terms he was to receive all the surplus shavings which defendant would accumulate at its news planing mill. Plaintiff was to pipe, at his expense, the shavings to where he might wish to have them deposited, and in addition he was to pay $25 per month for the shavings during the term of the lease. The agreement was to continue in existence for five years, with privilege of renewal for another five years. The pipe known as the blowpipe was to remain the property of the plaintiff, at whose expense it was to be maintained during the life of the contract.
The agreement contains the stipulation that if, for any reason, plaintiff became unable to receive or take care of the shavings defendant, at its option, retained the privilege of using the blowpipe for a reasonable length of time until other disposition could be made of the shavings.
The defendant sought to terminate the contract, and offered alleged equivalents in order to obtain its freedom from the execution of a contract which became annoying and unremunerative. These different proposals plaintiff refused to accept. Whereupon defendant notified plaintiff that it did not pro *518 pose to continue in performing the obligations under the contract.
Plaintiff instituted suit before the federal Circuit Court, alleging the facts of the cause and the breach of the contract. He also represented that defendant had complied with the contract for a considerable length of time, delivered shavings until the contract became irksome, and that in the month of September, 1908, defendant company requested him to modify the contract by releasing it from delivering any shavings, except those required to operate his electric plant in the city of Kentwood, to which plaintiff refused his consent. Defendant also proposed to plaintiff to reduce the amount payable each month under his contract, upon condition that he would consent to the modification of the contract proposed; that also was refused, and finally the defendant, through one of its officers, formally notified him that it would not continue to operate under the contract.
After this refusal defendant operated a blowpipe of its own at its mill. Plaintiff’s charge is that through this blowpipe it diverted all of the shavings, and managed it so that no shavings could be delivered to him.
That about this time defendant’s representative wrote to him (plaintiff) very similar to the request previously made to modify the agreement, and reiterated that-it would not deliver shavings as it had delivered previously.
Plaintiff sets forth that he has complied with his contract; that the blowpipe was blown down in the year 1909; that the defendant refused to allow him to reconstruct it; that the defendant had acted wantonly in different ways stated.
Plaintiff asked for a writ of injunction to issue, and prayed for specific performance of the contract.
The defendant demurred on the grounds that complainant had not made a case entitling him to relief; that the bill did not state a cause of action; that plaintiff has adequate remedy at law.
After a hearing of the parties the court refused plaintiff’s application for an injunction pendente lite, and sustained defendant’s demurrer and dismissed plaintiff’s complaint.
An appeal was allowed and perfected to the United States Circuit Court of Appeals. The following was complainant’s assignment of errors: Substantially that the Circuit Court had erred in holding that complainant has a remedy at law; also in holding that there was no mutuality in the contract; also in holding that-equity should take jurisdiction to avoid multiplicity of suits; that the Circuit Court also erred in that it was powerless to enforce the order sought, if issued, for the order sought was not one commanding the affirmative doing of an act, but one restraining the doing of an act; that the court a qua erred in holding that it was a continuing contract, not enforceable in a court of equity, the relief sought being not affirmative, as, for instance, “the making of a singer sing,” but negative, as, for instance, forbidding her to “sing elsewhere than in complainant’s opera house.” This is a borrowed expression, used at common law.
The Circuit Court of Appeals of the United States decided as follows:
“A majority of the judges are of the opinion that the contract, which is the basis of this suit, lacks mutuality in this: That Kennon does not contract to receive and pay for all the shavings furnished or tendered him, nor any definite quantity thereof, but only such shavings as he shall be able to receive and take care of; so that, in case Kennon’s electric light plant should break down or be otherwise disabled, or Ken-non should find other and cheaper fuel, or, in short, find any reason satisfactory to himself, he could decide not to receive and pay for any more shavings; and the Brooks-Seanlon Company could have no relief, except the right to temporary use of Kennon’s blowpipe. See Rut-land Marble Co. v. Ripley, 10 Wall. 339 T19 L. Ed. 955], and cases, 7 Bose’s Notes, p. 332.
“And it is further concluded, that if the mutuality of the contract be conceded the specific performance thereof is within the discretion of a court of equity, and should be refused, because *520 it can only be enforced by a mandatory injunction covering a term of years, and particularly in this case, where the plaintiff has a remedy at law substantial, if not fully complete and adequate from the equity standpoint. See Javierre v. Central Altagraeia, 217 U. S. 502, 508 [30 Sup. Ct. 598, 54 L. Ed. 859].
“The decree of the Circuit Court is affirmed.”
Subsequently plaintiff filed suit in the district court of Tangipahoa. The petition is similar to that filed in the federal Circuit Court, save as relates to the value of the shavings.
The petition in the Circuit Court contained the averment, in substance, that the property was “not a staple article or produce having a fixed value”; that new uses are now found for it, such as baling and shipping for fuel, making of alcohol, pulp; with the new uses, the value accrues.
In the petition to the state court there is a value fixed; that is the only difference between the two petitions we have noted.
In the state court the Brooks-Scanlon Company, defendant, pleaded res judicata and no cause of action.
The former (res judicata) was predicated upon the decision rendered in the Circuit Court of the United States, in equity, to which, as above stated, the defendant had demurred; the bill on the demurrer was dismissed without reservation; plaintiff filed a petition for rehearing on grounds before stated by us, which was refused. Upon the appeal and assignment of errors the case was heard in the federal Circuit Court of Appeals at its March term, 1911 (184 Fed. 988, 106 C. C. A. 665), and the decree of the United States Circuit Court was affirmed for reasons before stated in the opinion of that court.
Defendant, Brooks-Scanlon Company, urges that the final decree, without reservation, absolutely binds and condemns plaintiff; that it is res judicata; that the federal court decided that there was no mutuality between the parties.
The judge of the district court stated that the case was before him on the plea of res judicata and of no cause of action, filed by defendant, sustained the pleas, and dismissed the suit.
Plaintiff has appealed.
[1] There is no good reason why parties should not be bound by the judgment of a court of justice in a suit in which they appear as parties in interest and upon grounds adjudged by the judgment in the former suit; that is, if the persons, the issues, and the cause are the same.
There may be sound reason, why it is not res judicata if another res be alleged in another suit and another cause of action.
We have arrived at the conclusion not to hold at this time whether or not the plea of res judicata was good as relates to damages. As we are not inclined to the view that it is res judicata as to damages, that will have to be considered later.
After questions at issue have been considered and decided according to the rule which is enforced in the federal courts, if there are no qualifying words made part of the decree, such as reserve the rights of parties, for instance, the words, “without prejudice,” or, “as in case of nonsuit,” the decision, if final, will sustain the plea of res judicata. We think that the plea of res judicata holds good as relates to the question of failure to perform the contract, but no further.
There is a plea for specific performance of the contract in. the prayer of the petition, but no demand relating to damages was made by plaintiff. The federal Circuit Court had jurisdiction of that plea. That plea, the alleged nonperformance of the contract, has been finally decided, and is now barred by the plea of res judicata.
[2] That was the only issue decided, but the question of damages is still open. The demand for damages made in the present case was not considered in the federal court, *522 as it was not presented to that court for consideration. It only declined to grant the injunction, and declined to compel the defendant “to do” that which plaintiff’s injunction prayed it should be made to do.
It may be that by inference the conclusion may be reached that this would preclude the possibility of arriving at a different conclusion than that heretofore arrived at, in so far exclusively as relates to nonperformance of terms of a contract. But under the construction of our jurisprudence, which considers that res judicata is subject to strict constructions, we do not find that we can, at this time, maintain res judicata as relates to damages. The question is therefore left open as to damages, and the case is remanded to be tried on only the question of damages. In that connection all the issues and pleas are to be reconsidered, both as relates to mutuality and the binding effect of that plea vel non, as heretofore decided in the federal court.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is avoided,-annulled, and reversed; the case is remanded in order to be tried in accordance with the views herein expressed. Costs of aj)peal to be paid by appellee.