[No. 10955. Department One. April 1, 1913.]

JOHN HAUGE, *Respondent*, v. A. WALTON *et al.*, *Appellants*.[1]

NAVIGABLE WATERS—SHORE LANDS—ISLANDS. No statutes of this state indicate any intention to pass to the owner of abutting lands the title to islands, even if joined to the mainland by a strip of "shore land," defined by Rem. & Bal. Code, § 6641, as lands bordering on the shores of navigable lakes and rivers, below the line of ordinary high water.

PUBLIC LANDS—"FRAGMENTARY" TRACTS OR ADJOINING ISLANDS—FEDERAL GRANT—TITLE OF STATE—RIPARIAN RIGHTS. Under the constitution whereby the state has been granted by the Federal government title to all shore lands, and the beds of navigable lakes and streams, riparian owners under Federal patent take title only to the line of ordinary high water, and acquire no interest in islands severed from the mainland by shore lands; hence such an owner who has purchased from the state the "abutting shore lands," acquires no interest in an island, separated from the mainland by the intervening shore lands, although during low water in the dry season the island was connected with the mainland by a strip of uncovered shore lands.

EJECTMENT—TITLE. In ejectment, the plaintiff must recover on the strength of his own title.

[1]Reported in 131 Pac. 248.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered June 1, 1912, upon findings in favor of the plaintiff, in an action of ejectment. Reversed.

*Chas. K. Jenner* and *G. J. Hodge,* for appellants.

*Hathaway & Alston,* for respondent.

Chadwick, J.—The plat will illustrate our discussion.

There is no statement of facts, and the only question open is whether or not the findings sustain the judgment of the lower court. It is insisted that the findings were made upon an indefensible theory of law, and that no lawful judgment can be entered thereon. This necessitates a more complete discussion than would otherwise be necessary. There are some unchallenged remarks in the briefs, and we shall adopt them and the findings as our warrant for the following statement: Plaintiff is the owner of lots six and seven, as shown

on the plat. A stranger to this action owns lot five. About five years before the commencement of this action, defendants had permission of the owners of lot five to settle on the island, which has an area of about three-quarters of an acre. They have since resided thereon. In the dry season, there is a strip of uncovered land connecting the island with the shore. This strip is indicated on the plat by small dots. In the winter time, this strip is covered by about twelve inches of water. As soon as plaintiff discovered the presence of the defendants, he began this action to oust them. From a judgment of ouster, defendants have appealed.

In the year 1908, plaintiff purchased the shore land abutting lot seven, and now claims title thereto under a contract from the state. A memorandum decision rendered by the trial judge indicates that it was his opinion that the island, being unsurveyed by the government of the United States, was shore land and passed from the state to the plaintiff under his contract. The court did not make a specific finding to this effect. Indeed, the findings seem to have been drawn upon a different theory, to which we shall presently refer. We shall not go into a discussion of the law of shore lands, for we are agreed that the island is not, and cannot from the very nature of things, be called shore lands. "Shore lands are lands bordering on the shores of navigable lakes and rivers below the line of ordinary high water." Rem. & Bal. Code, § 6641. There is nothing in this definition or the statutes to indicate that it was ever the purpose of the state to convey title to any upland, although it might be joined, as this island is, with the mainland by a strip of shore land.

The only theory, therefore, upon which the findings of the trial judge can be sustained is, that the island is an unsurveyed island or neglected fragment such as is mentioned in *United States v. Chandler-Dunbar Water Power Co.*, 209 U. S. 447; and it is likely that counsel, in drawing the findings which the court has signed and which have been brought to us, had in mind the rule of law which attaches these small

islands and fragments to the adjoining or abutting property. We understand this rule to be that, if there be a fragment of land along the shore of a lake or stream, it will attach to the government subdivision adjoining it, or if it be an island and there is no navigable channel intervening, that it will pass to the nearest land abutting the shore. In order, therefore, to settle a difference that might arise between the owner of government lot five and government lot seven, for each might contend that he was the owner of the small fragment "E—B —F," the court bisected the fragment with the line "B—D" and held the island to be then abutting and appurtenant to government lot seven. The fault in this theory lies in this: that wherever the right to claim small islands as a part of the upland has been applied, it has been where, under the law of the state, the owner of the upland had a riparian proprietorship extending to the thread of the stream or lake. He then takes title in virtue of his riparian ownership. 29 Cyc. 354; *Whitaker v. McBride*, 197 U. S. 510; *Hardin v. Jordan*, 140 U. S. 371; *Franzina v. Layland*, 120 Wis. 72, 97 N. W. 499; *Sliter v. Carpenter*, 123 Wis. 578, 102 N. W. 27.

The government of the United States has granted to the state of Washington title to all tide and shore lands and to the beds of all navigable streams and lakes. This title is asserted in the constitution of the state, in various acts of the legislature, and acts amendatory thereto, and has been sustained by repeated decisions of this court. Plaintiff took under his patent to the line of ordinary high water. That line marked the limit of his boundary.

"Unquestionably, the supreme court of the United States has uniformly held that grants of uplands bordering on navigable waters convey to the grantee title down to the line of ordinary high water of such navigable waters, but they have just as uniformly held that the answer to the question whether it conveys more than this, depends upon the local law of the state wherein the granted lands lie. If the local law recognizes such grants as extending to low water mark or to the thread of the stream, it will be so recognized by the

Federal authorities; but if the state limits the grant to the line of ordinary high water, as our state does, this line will be held to mark the boundary of the grant. This is founded on the principle that the shores and beds of all bodies of water, whether navigable or unnavigable, belong to the state on which they are situate, and that it is for the state to say whether or not it will assert its title to such shores and beds, or whether it will surrender them to the upland proprietor." *Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 95 Pac. 278.

See, also, *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267; *Van Siclen v. Muir*, 46 Wash. 38, 89 Pac. 188; *Washougal & La Camas Transp. Co. v. Dalles P. & A. Nav. Co.*, 27 Wash. 490, 68 Pac. 74; *Nassa v. Seaborg*, 64 Wash. 164, 116 Pac. 658.

In this case, there is an intervening proprietorship which was held and maintained by the state until it was purchased by plaintiff under his contract. The state, so far as we are informed, has never attempted to assert title to the island as a part of its shore lands; therefore, plaintiff not having taken anything beyond the line of ordinary high water (granting his complete title to the fragment "E—B—F") from the government, and having no claim to the island as shore lands of the state, it follows that he has no title to sustain the action which he now brings.

In the case of *Niles v. Cedar Point Club*, 175 U. S. 300, the government surveyor limited his survey at what he called a marsh, and meandered along it so as to leave it between the meander line and the navigable waters of Lake Erie. The court held that the patentee of abutting land could not claim the marsh land as a part of the grant, for having bought a fractional part of a section and having paid for that part, she was limited to the very lands conveyed to her and for which she had paid, and that her title did not extend beyond the meander line or, as we have declared the law to be in this state, beyond the line of ordinary high water. That case is in principle identical with this one. Here there was a frac-

tional lot. The government limited its grant to the line of ordinary high water, and plaintiff has all that he ever earned or purchased, the source of his title being unknown to us. In *French Glenn Live Stock Co. v. Springer,* 185 U. S. 47, the court held that, where a survey showed a meander line bordering on a tract of marsh or swamp lands, the grant terminated at the meander line, and did not carry swamp lands lying between it and the shore. See, also, *Horne v. Smith,* 159 U. S. 40; *Kirwan v. Murphy,* 189 U. S. 35.

The cases sustaining the right to claim islands, as we have said, depend upon a riparian proprietorship in the bed of the stream, and presuppose and rest upon the fact that there is intervening water the bed of which belongs to the abutting owner. The cases we have just cited illustrate the distinction between those cases and the case we have at bar. "As in them the swamp and boggy land is to be treated as land" (the *Niles* case *supra*), so is the whole theory of our state ownership of tide, shore and swamp lands made to rest upon the theory that such land is land and not water. According to the plat that is submitted in evidence, it is evident that there is no intervening water between the shore land and the island, and a judgment that the owner of government lot seven can claim title to the unsurveyed island upon the theory that it is an island abutting and appurtenant to his land, has not the sustaining grace of the law. While we have not followed the argument of counsel, we nevertheless agree that the findings of the lower court were drawn upon an indefensible theory of the law, and that plaintiff has no title, it being the rule in this class of cases that a plaintiff must recover upon the strength of his own title. It follows that the case will be remanded and dismissed. Whatever the rights of the defendants may be, we do not undertake to say. It is enough that plaintiff has no interest.

Remanded with orders to dismiss.

CROW, C. J., GOSE, PARKER, and MOUNT, JJ., concur.