# NORTHWESTERN TRANSFER CO. *v.* INVESTMENT CO.

### (158 Pac. 281.)

**Contracts—Construction—Intent.**

1. Under Section 716, L. O. L., in the construction of written agreements, the intention of the parties is to be pursued, if it can possibly be done.

**Partnership—Creation.**

2. An agreement between several parties to build a house, containing no stipulation to share in the losses and profits of the business, establishing no communtiy of interest between the parties in the subject matter of the contract, and manifesting no intention of the parties to become partners, did not create a partnership.

**Partnership—Character of Member.**

3. Each member of a partnership is a principal with a joint interest in the partnership property, and an agent of the other partners in dealing with third persons concerning partnership transactions.

**Partnership—Notice.**

4. Notice to one partner, in reference to any matter relating to a transaction within the scope of the firm's business, is notice to all.

**Joint Adventures—Advances—Rights of Party to Sell.**

5. Where an investment company agreed to sell lots at a certain price, and agreed to and loaned money to the other parties to an agreement for a joint venture in building a house for sale, and such other parties failed to purchase the lots or make any sale of the house and lots, the investment company was entitled to sell, substantially as in foreclosure, to obtain its advances.

> [As to mutual rights and liabilities of parties to joint adventure, see note in **Ann. Cas. 1912C, 202.**]

From Multnomah: William N. Gatens, Judge.

In Banc.    Statement by Mr. Justice Bean.

This is a suit by the Northwestern Transfer Company, a corporation, against the Investment Company, a corporation, for an accounting.    From a decree in favor of defendant Investment Company, plaintiff appeals.

The transaction was about as follows: On November 1, 1908, the defendant Investment Company entered into a contract with the plaintiff and its codefendants, who are the same parties signing schedule A referred to in the complaint.    The material parts of this agreement are as follows:

"This agreement made * * between the parties signing Schedule A hereto attached, * * herein described, parties of the first part, and the Investment Company, * * party of the second part.

"Witnesseth: Party of the second part agrees to sell to parties of the first part, * * lots Nos. 7 and 8, Block No. 23, Piedmont, in the City of Portland, for the price or sum of two thousand three hundred dollars ($2,300) at any time within one year of the date hereof.

"Parties of the first part agree at once to begin the erection of a dwelling upon said lots from the plans and specifications, signed by the respective parties, * * under the direction and superintendence of A. H. Faber, architect.  * * Investment Company agrees to furnish toward the erection and completion of said dwelling a sum not exceeding two thousand five hundred dollars ($2,500) for the labor and materials as set forth in Schedule B hereto attached. * * Said dwelling shall be sold by the said parties of the first part as speedily as possible and the proceeds thereof paid to the said Investment Company, who shall execute a good and sufficient title to the purchaser

thereof. The proceeds of such sale shall be divided and distributed to those entitled thereto as follows:

"(1) The price of said lot shall be paid in full to said Investment Company.

"(2) The amount of all advances shall be refunded to said company in full, together with interest thereon at the rate of 7 per cent per annum from the date of such advancements.

"(3) All taxes and insurance premiums paid by the said company subsequent to the commencement of said dwelling shall be treated as advancements and to be so paid.

"(4) All outstanding bills for labor and materials other than those done or supplied by the parties of the first part shall be paid in full.

"(5) The respective amounts set forth in Schedule A shall be paid to said parties of the first part as compensation for the work or materials supplied by them.

"(6) Any profit derived upon the sale of said house shall be divided among the said parties of the first part in the ratio that their respective contributions of work or materials bears to the whole amount so contributed, so shall their respective dividends bear to the total profit realized.

"(7) Should any loss be incurred on such venture said Faber agrees that said loss shall be paid out of any sum or sums otherwise payable to him as set forth in Schedule A. Should such loss exceed said sums the same shall be ratably deducted from the other sums set forth in such schedule.

"It is further agreed that should the house not be sold and disposed of within one year from date the said Investment Company may expose the same to public sale by open vendue or outcry and sell the same to the highest and best bidder and may at such sale become the purchaser thereof, any law prohibiting trustees purchasing at their own sale to the contrary notwithstanding."

By schedule A the Northwestern Transfer Company agreed to haul the stone for the construction of the

building at the rate of $3.50 a ton and to advance the freight which amounted to $1,249, with which it complied. Pursuant to the terms of the agreement defendant advanced the sum of $2,500 to the first parties, who commenced the erection and construction of the dwelling-house upon the lots as therein provided, under the directions of A. H. Faber, architect. After that amount was exhausted the first parties applied to the defendant company for financial assistance, and at their special instance and request it advanced other sums of money under the agreement and extended and continued the time in which the dwelling should be completed for a greater period than specified in the contract. The total advancements made by the defendant to the first parties, together with the price of the lots with interest thereon, aggregated $13,136.40. The first parties did not sell the house as contemplated by the contract, but allowed the same to remain unoccupied and to deteriorate in value, and for more than four years made no attempt to provide means with which to repay defendant for its advances. Pursuant to the terms of the contract the Investment Company, after advertising the house and lots for sale and after due notice to the several parties of the first part, on June 21, 1913, exposed the property for sale publicly to the highest bidder and purchased it for $12,300, which was insufficient, it is alleged, to pay it the purchase price of the lots and the advancements in money.

AFFIRMED.

For appellant there was a brief over the names of *Mr. F. B. Woodruff* and *Messrs. Emmons & Emmons,* with an oral argument by *Mr. Woodruff.*

For respondent there was a brief over the names of *Messrs. Bronaugh & Bronaugh* and *Mr. Franklin F. Korell,* with an oral argument by *Mr. Earl C. Bronaugh.*

MR. JUSTICE BEAN delivered the opinion of the court.

1–3. It is the contention of plaintiff that in accordance with the terms of the contract a partnership was created between the parties of the first part and the Investment Company, and that the latter, after purchasing the property, held it in trust for the other parties: Section 715, L. O. L.; *Egan* v. *Oakland Ins. Co.,* 29 Or. 403, 411 (42 Pac. 990, 54 Am. St. Rep. 798). In the construction of written agreements the intention of the parties is to be pursued if that can possibly be done: Section 716, L. O. L.; *Weidert* v. *State Ins. Co.,* 19 Or. 261, 270 (24 Pac. 242, 20 Am. St. Rep. 809). The agreement entered into between the parties in this case does not establish a partnership between the plaintiff and the defendant Investment Company, for the following reasons: (1) There is no stipulation to share in the profits and losses of the business: *Hanthorn* v. *Quinn,* 42 Or. 1, 7 (69 Pac. 817). (2) There is no community of interest between the parties in the subject matter of the contract: *Shebley* v. *Quatman,* 66 Or. 446 (134 Pac. 68). And (3) there is no intention manifested by the parties to become partners: *North Pac. Lbr. Co.* v. *Spore,* 44 Or. 462, 470 (75 Pac. 890). There was, however, a partnership created between the other parties signing schedule A, including the plaintiff. Accordingly, each member thereof is a principal having a joint interest in the partnership property and an agent of his assistants in dealing with

third persons concerning partnership transactions: *Hanthorn* v. *Quinn,* 42 Or. 1, 7 (67 Pac. 817).

4. The plaintiff complains that it was not consulted nor advised as to advances made by the defendant to the first parties. However, it cannot avoid the acts of its copartners in dealing with the Investment Company in this case by asserting that it had no knowledge of them, for the reason that notice to one partner in reference to any matter relating to a transaction within the scope of the firm's business is notice to all of them: 30 Cyc. 530.

5. According to the terms of the contract and the evidence in the case, the Investment Company agreed to sell the lots mentioned at a certain price, and agreed to and did loan money to the other parties to the agreement who entered into a joint venture in building a house for sale. It may not have been a wise contract for the plaintiff to make; but that is a matter solely for it as the court cannot stipulate for it. The parties of the first part, as they are generally termed, having failed to purchase the lots or make any sale of the house and lots, the only thing remaining for the defendant to do was to sell the same substantially as in a foreclosure in order to obtain its just dues.

It is complained that the Investment Company charged interest on the price of the lots to which it was not entitled, but it is not necessary to discuss this matter, as without such interest there would still be left an amount greater than that bid for the lots. In order to do equity, the parties interested should pay the amount due to the Investment Company or redeem the property. There is little controversy in regard to the facts in this case. The construction of the con-

tract of the parties determines the issue.   The decree of the lower court was correct, and is affirmed.

AFFIRMED.

Mr. Justice Burnett not sitting.

Mr. Justice Eakin absent.