Argued June 22, reversed November 3, rehearing denied December 7, 1926.

# H. H. WORDEN COMPANY *v.* A. G. BEALS AND W. A. BENNETT, PARTNERS.

(250 Pac. 375.)

**Partnership.**

1. Burden of establishing existence of partnership is on party alleging it.

**Partnership—Whether One Acted as Partner Depends on Contract of Partnership, Where There were No Circumstances Except Contract to Show Existence of Partnership.**

2. Where there were no circumstances showing existence of partnership, except terms of contract between alleged partners, question whether one of parties purchasing goods was a partner depends on contract itself.

**Partnership—Contract for Sale of Timber to be Manufactured and Marketed by Buyer, Providing That Seller was to Share in Gross Earnings After Deducting Specific Sum for Buyer, Held not to Create Partnership.**

3. Contract for sale of timber to be manufactured and marketed by buyer, providing that seller was to share in gross earnings after deduction of specific sum to be paid buyer, *held* not to create a partnership nor to show intention to enter into partnership.

**Partnership—Under Contract Creating No Community of Interest in Business, and Giving No Common Control Thereof, No Partnership was Created.**

4. Where one party to a contract was to share only in gross earnings of business, after deducting fixed sum as cost incurred by other party, who was in charge of business, there was no community of interest in business, and no common control thereof, and hence no partnership was created.

**Partnership.**

5. Where both community of interest in business and common control thereof is lacking, sharing of profits of business is not sufficient to constitute a partnership.

**Partnership—Under Contract Providing for Share of Gross Earnings in Business by Both Parties, but Vesting Control of Business in One Party, Only Relation That Could Arise was That of Debtor and Creditor.**

6. Under contract for sale of timber, providing that seller was to share in gross earnings after deducting specific sum for costs in-

2. See 20 R. C. L. 810.
4. See 20 R. C. L. 830.
5. See 20 R. C. L. 824.

curred by buyer, who was to conduct the business, each party to act individually, the only relationship that could arise was that of debtor and creditor.

**Principal and Agent—In Absence of Creation of Partnership in Business or Express Authority to One Party to Purchase Goods, There was No Implied Authority to Incur Liability for Other Party.**

7. Where contract providing for conduct of lumber business gave no express authority to one party to purchase goods, and no partnership was formed, one party had no implied authority to incur any liability binding on other party.

Partnership, 30 Cyc., p. 349, n. 1, p. 360, n. 64, p. 363, n. 72, p. 366, n. 88, p. 376, n. 25, p. 379, n. 31, p. 380, n. 34, p. 383, n. 48, p. 402, n. 40, p. 403, n. 51.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

Plaintiff commenced this action against the defendants A. G. Beals and W. A. Bennett to recover upon two counts, for goods, wares and merchandise which were sold and delivered by it and by its assignor, Simonds Manufacturing Company, to the defendant Bennett. The complaint alleges that at the time the goods were sold, Beals and Bennett were copartners, doing business under the firm name and style of Virgin Spruce Lumber Company, and that certain goods, wares and merchandise were sold and delivered to them as copartners. Beals filed a separate answer in which he denied the existence of the copartnership, as well as all of the other allegations in the complaint. The case was tried upon a written stipulation of facts which recited that the goods were sold to the Virgin Spruce Lumber Company and were of the value alleged in the complaint. To this stipulation there was attached as an exhibit, a copy of a written contract which had been entered into between the defendants Beals and Bennett and which it was stipulated was in full force and effect at the time of the sale and delivery of the goods. No

oral proof was offered in the case and there is no proof in the record of any relationship between the defendants except that arising from the contract itself. The bill of exceptions recites that the cause was submitted in the court below entirely upon the written stipulation and the contract referred to and that no other evidence was offered or introduced at the trial of the cause.

Plaintiff had judgment against both defendants, and Beals has appealed. The judgment against Beals depends for its validity solely upon the question of whether under the terms of this written contract, Beals was chargeable as a partner of Bennett for the purchase price of the goods. The contract in question was as follows:

"This Contract, made the 3rd day of April, 1920, between A. G. Beals of the first part and W. A. Bennett, of the second part witnesses:

"First party agrees to furnish to second party all of the merchantable timber now on the following real property situate in Tillamook County, Oregon, to-wit:

"The Southwest quarter of the northeast quarter and the north half of the northeast quarter of section four, township two south, and the southeast quarter of the southeast quarter of section thirty-three in township one south, all in range ten west of Willamette Meridian. Together with the right to enter on said lands and cut and remove said timber, and for that purpose to build logging ways and roads, place thereon logging equipment and a sawmill, with the right to remove the same from said premises, and to operate said sawmill thereon during the time herein limited.

"Second party agrees to pay first party for said timber at the rate of four dollars per thousand feet, as herein provided for. Second party agrees to install on said premises for the purpose of manu-

facturing said timber into lumber, a sawmill with a capacity of 25,000 feet of lumber per day; to take immediate steps to construct said mill and prosecute such construction with reasonable diligence and have same completed within 90 days from date hereof, unless delayed by causes beyond his control.

"The timber being purchased by second party shall be by him manufactured into lumber at said sawmill; he shall log said timber, cutting the same clean as he goes, and the logging operations shall be carried on by a competent logger in a proper manner for logging; he shall take all merchantable timber, including the down sound timber, which shall be fit for manufacture into #2 box lumber or better.   The logs shall be scaled at the mill by a scaler mutually agreeable to the parties, according to the Spaulding scale.

"The lumber manufactured by second party shall be marketed by him, being sold at the best prices obtainable therefor practicable with his carrying on his operation.  In addition to the four dollars per thousand feet to be paid first party as hereinbefore mentioned, first party shall further receive, as part compensation for the said timber, one-third of the profits arising from the sale of lumber as determined in the following manner;

"Second party agrees to operate said sawmill and market the lumber as aforesaid, he being allowed therfor a cost of logs and manufacture of $21.00 per thousand feet, and all received from the sale of lumber in excess of $21.00 per thousand feet is to be divided between first party and second party, first party to receive one-third thereof and second party two-thirds thereof.

"Settlement of the $4.00 per thousand feet and division of profits to be made on the 10th day of each month, settlement being made at time for all logs delivered at the mill and lumber sold during the previous calendar month; settlement to be made by paying first party in cash the amount which he shall at that time be entitled to upon such settlement.

"The parties make this agreement in contemplation of there being between nine million and ten million feet of timber to be cut and removed hereunder, and second party agrees to continuously operate the logging and milling parts under this agreement until the whole of said timber shall have been logged and manufactured into lumber and sold, provided the market shows a safe margin for the sale of lumber above the $21.00 fixed hereby as the allowance of cost of logs and manufacture.

"Second party's operation shall be carried on with such dispatch that the same shall be fully completed within thirty months from the date hereof.

"Second party shall at all times when due pay all of the expenses of the operations being carried on by him and he shall not at any time suffer or permit the logs or lumber, covered hereby, or the mill to be erected by him, to be incumbered by liens, but shall keep the same free therefrom at all times.

"Second party shall at all times keep an accurate record showing all lumber produced, the lumber sold and lumber on hand, and first party shall have the right to examine said records at any time. Second party shall furnish first party copies of all orders received for lumber and copies of invoices of lumber shipped, same to be furnished upon receipt of orders and upon shipment of lumber so that first party may be kept informed in regard thereto at all time; all to be mailed to first party at address to be furnished by him if he should be away from Tillamook at the time.

"No lumber shall be sold by second party at prices under the market at the time, except after consultation and agreement with first party if first party be accessible for such consultation.

"Division of profits and payments to first party of his share thereof to be made on basis of moneys received from lumber sales, deferred payments to be divided when received, that is at time of following monthly settlement on 10th of month.

"It is agreed that the $21.00 allowed for cost of logs and manufacture shall include and cover stumpage, logging, manufacture into lumber, cartage, grading and loading at Tillamook, either on cars or delivered there to local customers, and same is intended to cover all expenses, so that all amounts received for lumber above $21.00 per thousand feet shall be considered as profits for division between the parties as specified."

REVERSED.    REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Jay Bowerman.*

For respondent there was a brief and oral argument by *Mr. George S. Shepherd.*

RAND, J.—1, 2. When the question of the existence of a partnership is in issue, the burden of establishing the partnership rests upon the party alleging it. Plaintiff, upon whom rested the burden of proving the partnership, contends that this contract should be construed in the light of the surrounding circumstances and that if so construed, a partnership will be inferred, but since no fact or circumstance, except the terms of the contract themselves were either alleged or proven, there can be no basis for the application of the principle which plaintiff seeks to invoke, and hence in the purchase of the goods, whether Beals was a partner or not, depends wholly upon the legal effect to be given to the contract itself. As said in Parsons on Partnership (4 ed.), Section 41:

"There is ordinarily no difficulty in establishing the existence of a partnership. The relation of the parties is usually fixed by a written agreement, known as 'articles of co-partnership,' which in almost every

case provides at the outset for the formation of a partnership, and declares the parties to be partners. But in some cases an agreement, either oral or written, is entered into by the parties concerned, which does not profess to create a partnership, yet it is contended that the effect of the agreement is to create one. A question of much difficulty is then presented, namely; whether the agreement, the terms of which are known, does in fact create that sort of relationship between the parties which the law considers a partnership.''

3. This contract does not in itself profess to create a partnership, nor does it contain any words evidencing any intention upon the part of the contracting parties to enter into a partnership. While this in itself is not conclusive upon the question, yet it is a circumstance tending to show that the parties did not intend to create a partnership when entering into the contract.

All text-book writers seem to agree, that it is much easier to give an illustration of a partnership than it is to give a comprehensive and accurate definition of one; but all agree that there are certain elements which must exist before a partnership can be formed. Professor Page in his work on Contracts, Volume 3, Section 1688 says: ''A partnership is a business relation between two or more persons arising out of a contract, by which they agree to unite their property, credit, services, skill or influence in some business, so that they have a community of interest in such business, and usually divide the profits and losses between themselves in a fixed proportion.'' He also says that in construing partnership contracts, the question of whether they have formed a partnership is to be determined by what they have agreed to do, and not by what they have agreed to call themselves.

If the contract contains the elements necessary to make it a contract of partnership, the relationship of the partners is not altered by the fact that they have agreed expressly that they will not call themselves a partnership and if they have entered into a relationship which the law holds to be a partnership, they are partners, although they may not have known the legal effect of their acts, and although they may have called the contract one of employment. He also says that the real test of the existence of a partnership, is community of interest in the partnership business.

In Parsons on Partnership (4 ed.), Section 42, the author states that up to the year 1860 it appeared to be the law in England, that the mere fact that participation in the profits of the business as such, made one a partner as a matter of law, but that this point of view has undergone a remarkable change. He then states: "This rule was however, confined to the case of participation in the net profits of a business; one who had a share in the gross profits of a business, so called, that is, the gross earnings of the business, was not held as a partner even as to third persons." This early English view of the law, that the mere participation in the profits of a business made one a partner as a matter of law, has never received the entire sanction of the courts of this state, for in *Cogswell* v. *Wilson*, 11 Or. 371 (4 Pac. 1130), the court said: "Mere community of interest is not sufficient, but there must be an agreement to share in the profits and loss. (*Holmes* v. *United Ins. Co.*, 2 Johns. Cas. (N. Y.) 329; *Post* v. *Kimberly*, 9 Johns. (N. Y.) 470.) Nor will an agreement to divide the gross earnings constitute individuals partners, but there must be an interest in the profits as profits (*Pattison* v. *Blan-*

*chard,* 5 N. Y. 186; *Heims' Heirs* v. *Howland,* 5 Denio, 68), and such profits must be shared as the result of the adventure or enterprise, in which both are interested, and not simply as a measure of compensation. (*Ogden* v. *Astor,* 4 Sand. (N. Y.) 311.) These references are sufficient to show that a communion of profit and loss is essential in order to constitute a partnership, and this, it would seem, is the true test to determine whether persons are partners or not."

In *Hanthorn* v. *Quinn,* 42 Or. 1 (69 Pac. 817), it was held that a mere agreement to share in the profits and losses of an enterprise does not of itself create a partnership, nor does the mere participation in the profits and losses of a business in itself alone, constitute a partnership, but there must also be such a community of interest as enables each party to make contracts, incur liabilities, manage the business and dispose of the entire property of the partnership for its purposes in the same manner and to the same extent that all could do if acting together, and it is there said that this rule is the same as to third persons unless the party sought to be charged has so acted as to lead such third persons to believe a partnership to exist and to act upon such belief.

4, 5. Applying these principles to the facts stipulated, it is obvious that no partnership between Beals and Bennett could result either from the making or the performance of this contract. They were to share only in the gross earnings of the business after deducting a specified sum fixed arbitrarily as the cost to be incurred by Bennett in the purchase of the timber and the manufacture and sale of the lumber. Under this contract Beals was not to have any charge or control over the management of the business. He could not make contracts, incur liabilities, manage the

business or dispose of the entire property for any purpose. All that he was to receive under the contract, was $4 per thousand feet and one third of such gross earnings as should remain after deducting an estimated cost of $21 per thousand feet, which sum was to be allowed Bennett as the cost of operation. And since Beals had no community of interest in the business and no common control thereover, no partnership could be created, for where both of these elements are lacking, the sharing of the profits of the business is not sufficient to constitute a partnership. See 1 Page on Contracts, § 1694.

"The true test of partnership, then," as said by the author in Parsons on Partnership (4 ed.), Section 54, "is the intention of the parties. They have agreed together for a certain purpose. If the purpose was the formation of an associated body, different from the individual parties, for which they are thereafter to act, they have formed a partnership. If, however the purpose was the entrance into a relationship in which one of the parties, at least, was to act as an individual solely for himself, without becoming a member of an associated body, there is no partnership formed and the parties are therefore not partners."

6, 7. A careful reading of this contract will disclose that it was not the purpose of either of these contracting parties to submit the control of his interest under the contract to the other, but that each intended to leave himself free to act as an individual and solely for himself as an individual. Under this contract, the money which Beals was to receive, was to be paid to him as compensation for property sold. Neither party had power to bind the other in respect to anything that he was to do in performing the con-

tract, and each party was to act individually and look after his own interest and not act as the agent of the other. In carrying out the contract, the only relation that could arise, was that of debtor and creditor. There was to be no division of net profits, no community of interest in the capital of the business, or in the property resulting from the performance of the contract; and no common control of the business. Since all of these elements were lacking, no partnership was formed, and since the contract itself conferred no express authority upon Bennett to bind Beals in the purchase of goods and no partnership being formed, Bennett could have no implied authority to incur any liability binding upon Beals.

For these reasons, the judgment against Beals must be reversed and it is so ordered.

Reversed.  Rehearing Denied.

McBride, C. J., and Burnett and Coshow, JJ., concur.