STEPHENS *v.* NEELY.

Opinion delivered November 19, 1923.

1.  PARTNERSHIP—DEFINITION.—A partnership is a voluntary contract of two or more persons for joining together their money, goods, labor and skill, or either of them, upon an agreement that the gain or loss shall be divided proportionately between them.

2.  PARTNERSHIP—EVIDENCE.—Participation in the profits of a business is of itself cogent proof that the person who does so is a partner, and, if unexplained, may be conclusive proof.

3.  PARTNERSHIP—PARTICIPATION IN PROFITS.—While an agreement to share profits, standing alone, is sufficient to establish a partnership as to third persons, it is not conclusive; and where one is interested only in the profits of a business as a measure of compensation for services rendered, he is not a partner.

4.  PARTNERSHIP—JURY QUESTION.—In an action on a partnership note the question whether a defendant who participated in the profits of the company was a partner or received such share of the profits merely as compensation for his services, *held* for the jury under the testimony.

5.  PARTNERSHIP—LIABILITY OF INCOMING PARTNER.—An incoming partner is not liable for existing debts, unless he makes himself so by express agreement or by such conduct as will raise the presumption of a special promise.

6.  PARTNERSHIP—IMPLIED AGENCY.—The law of partnership is but a branch of the law of principal and agent; the ground of liability of one partner for the acts of the other being that of implied agency within the scope of the partnership.

7.  LIMITATION OF ACTIONS—PAYMENT TOLLING STATUTE.—Whether an incoming partner becomes liable on an existing note of the old partnership depends upon whether he assumed such indebtedness, and, in the absence of such assumption, he will not be bound by

payments made by a member of the old firm, nor precluded from pleading the statute of limitations against such note, though he admits having signed it for accommodation.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

### STATEMENT OF FACTS.

H. G. Stephens and G. H. Friberg, as executors of the estate of Helena Hanks, deceased, brought this suit against Jack McDonald and M. Neely, alleging that they were partners under the firm name of McDonald Bros., and seeking to recover upon a promissory note for $10,000 dated March 27, 1914, and payable to the order of Mrs. Helena Hanks, and signed by McDonald Bros.

It is alleged and proved that this note was given as a renewal of a similar note for the same amount executed in 1910, payable to the same person and signed "McDonald Bros."

According to the evidence adduced in behalf of the plaintiffs, a firm composed of W. D. Reeves, Dan McDonald and Jack McDonald was organized in 1889, to operate a sawmill in Eastern Arkansas. The business prospered, and continued until some time in 1893, when W. D. Reeves withdrew from the firm. Some time in 1905 Dan McDonald died. His widow continued in the business, and it was run in the partnership name until some time in March, 1914. At that time Mrs. McDonald sold out her interest in the business to Jack McDonald and M. Neely. After the purchase Jack McDonald had a three-fourths interest in the partnership and M. Neely a one-fourth interest in it. The note in this suit was given for money borrowed by the firm, and was a renewal note. When Mrs. McDonald sold her interest in the business, Jack McDonald and M. Neely executed their joint note to her for the amount paid her. After Mrs. McDonald sold her interest, the name of M. Neely was placed in the letterheads of the firm.

M. Neely was the principal witness for himself. According to his testimony, he was never interested in

the partnership of McDonald Bros., but had only worked for the firm as an employee. He first began to work for Dan and Jack McDonald in 1887, in the State of Tennessee. He was employed by them as a lumber inspector. Afterwards they moved to Arkansas, and, in 1889, formed a partnership with W. D. Reeves. Neely came to Arkansas with them and continued to work for them as lumber inspector. The firm was dissolved in 1893 by the retirement of Reeves. Dan McDonald and Jack McDonald continued in the lumber business in Arkansas. Reeves offered Neely employment in a new business which he was organizing, and Dan McDonald told Neely that if he would stay with the old firm he would give him an interest in the profits. In 1902 it was agreed that Neely should receive a stated salary and one-fourth of the net profits for his compensation. This agreement was not changed after the death of Dan McDonald, and continued until 1915. Neely helped in the management of the business, and stated that he subsequently allowed his name to be placed upon the letterheads of the firm, not because he was a partner, but because Jack McDonald told him that it would help the trade, because he was so well acquainted with the customers of the firm. When the widow of Dan McDonald sold her interest in the firm to Jack McDonald, Neely signed the note along with the brothers of Jack McDonald. He signed the note simply as an accommodation to Jack McDonald, and had no interest whatever in the firm. Neely admitted that sometimes he did not draw out all of his part of the profits, and allowed his share to be used by John McDonald in carrying on the business. He stated, however, that he allowed his share to remain in the business, not because he was a partner, but because he did not at the time need to draw out his share. His share of the profits was for services rendered by him, and he had a right to draw out what the firm owed him at any time, regardless of its condition.

The jury returned a verdict in favor of the plaintiffs against Jack McDonald, but found in favor of the defendant Neely. Judgment was rendered accordingly, and to reverse that judgment the plaintiffs have duly prosecuted an appeal to this court.

*W. G. Dinning,* for appellants.

1. The evidence, especially Neely's admissions that, for a period of sixteen years, he received one-fourth of all the profits earned by the firm, that he reinvested the major portion thereof in the business for the purpose of increasing and expanding it, and that he received one-fourth of all the profits earned by the increased operations of said business, shows such a community of interest in the capital employed, each sharing of the profits and joint management and operation of the business, as to prove the existence of a partnership. 20 R. C. L. 830; *Id.* 836; 8 H. L. Cas. 268; 65 U. S. 536; 107 Va. 476; 18 L. R. A. (N. S.) 962; 106 Va. 365, 56 S. E. 148; 87 Ark. 417; 63 Ark. 518, 525; 74 Ark. 442; 145 U. S. 611; 22 Howard, 330, 332; 138 Ark. 288; 144 Ark. 627; 143 Ark. 444.

2. The question of the statute of limitations has no place in the case. If Neely was not a partner of the firm of McDonald Bros. at the time of the execution of the note, he is not liable for its payment. If he was a partner at that time, he was jointly liable with Jack McDonald for its payment, and payments made by the latter tolled the statute as to all the debtors. 142 Ark. 180. The fact that these payments represented interest did not prevent them from stopping the running of the statute. 146 Ark. 64.

*J. G. Burke* and *Coleman, Robinson & House,* for appellee.

1. On the question of partnership the court instructed the jury, correctly defining the test of partnership, and the jury's verdict must be taken as conclusive on that issue. As to the law defining these tests, see

93 Ark. 526; 143 Ark. 439; 63 Ark. 518; 74 Ark. 442; 44 Ark. 424; 138 Ark. 231; 137 Ark. 89.

2. Instructions given at appellee's request were not abstract. An incoming partner in an existing business assumes no liability for previous debts of the concern, unless he does so by express agreement, or so conducts himself as to raise the presumption of a special promise. 49 Ark. 457. On the question of limitations, the rule that the payment of interest would toll the statute could apply to Neely only in the event he was a partner when the debt was originally created. If he was not a partner at that time, but afterwards became a partner, he could not be held liable for the debt, except upon a special promise to pay it, and, if that promise was oral, the three-year statute would apply. 47 Ark. 317; 138 Ark. 602; 94 Fed. 468; 164 U. S. 502.

HART, J., (after stating the facts). Jack McDonald made no defense to the action against him on the promissory note by the plaintiffs. It seems that the main purpose of the action in the circuit court was to charge M. Neely as a partner with Jack McDonald on the promissory note which the firm of McDonald Bros. had executed to Mrs. Helena Hanks in the sum of $10,000 on March 27, 1914. It appears that certain payments were made on the note by Jack McDonald from time to time until the 2d day of April, 1918, and that this suit was instituted on September 27, 1921, to recover the balance due.

It has often been said by judges and text-writers that it is not practical to give a definition of partnership that will cover all cases. In defining a partnership in the early case of *Howell* v. *Harvey,* 5 Ark. 270, this court said:

"A partnership, in its most significant and extended sense, is a voluntary contract of two or more persons for joining together their money, goods, labor, and skill, or either of them, upon an agreement that the gain or loss shall be divided proportionately between them, and hav-

ing for its object the advancement and protection of fair and open trade.''

In later cases this court has said that a partnership may be defined as the relation existing between two or more persons who have agreed to carry on a business together, and to share the profits thereof as the joint owners of the business. This court has also held that participating in the profits of a partnership is of itself cogent proof that the person who does so is a partner, and that, if unexplained, this may be conclusive proof. *Johnson* v. *Rothschilds,* 63 Ark. 518; *Herman Kahn Co.* v. *Bowden,* 80 Ark. 23, and cases cited, and *Mehaffy* v. *Wilson,* 138 Ark. 28.

In these cases this court has recognized that, while the agreement to share profits, standing alone, is sufficient to constitute a partnership as to third persons, it is not conclusive, and that, where it is shown that the division of the profits was merely a measure of compensation, there is no partnership. Where one is only interested in the profits of a business as a measure of compensation for services rendered, he is not a partner. In short, the participation in the profits might make him a partner, but not necessarily so. It would depend upon the intention of the parties as expressed by the terms of the agreement.

In the present case it is not contended that there were any written articles of partnership. Therefore, whether such relation actually existed is a question of fact to be determined from the evidence in the case, and upon the trial of that question there is no sound foundation requiring a jury to regard participation in the profits as a decisive test of the partnership which will render the participator in such profits liable for the debts of the partnership.

Here it must be admitted that there was strong proof to show that M. Neely became a member of the partnership after the widow of Dan McDonald sold out her interest therein. He signed a note to her for her share in

the business, and he permitted his name to be used upon the letterheads of the firm. He also received a division of the profits. However, as above stated, this evidence was not conclusive.

Neely testified that he received a share of the profits under an agreement made with Dan McDonald in his lifetime. This agreement was made in 1902, and was not changed after the death of Dan McDonald. Neely continued to work under the agreement that he was to receive a salary and one-fourth of the net profits until he left the firm in 1915. He had the right to draw out any commissions that the firm might owe him at any time, and did so. His testimony is corroborated by that of the bookkeeper as to the manner in which the books showing his accounts were kept.

It is true that Jack McDonald testified positively that M. Neely bought an interest in the business, but his testimony is flatly contradicted by that of Neely. The testimony of Neely that he never became a partner in the business is a matter of which he had personal knowledge. He knows whether or not he made an agreement with Jack McDonald to buy out the interest of the widow of Dan McDonald and to become a member of the firm. His testimony, then, was of a substantive character, and, if believed by the jury, warranted it in returning a verdict in his favor.

It is next insisted that the court erred in giving the following instruction:

"If you find from the evidence that Neely was not a partner when the note was executed, but that he afterwards became a partner, and by special promise or agreement assumed liability for the debt evidenced by the note, then the court charges you as a matter of law that he is liable only on such special promise or agreement, and, if the promise or agreement was not in writing, the three years' statute of limitations began to run thereon the 27th day of March, 1915."

We cannot agree with counsel for the plaintiffs in this contention. There is no presumption that an incom-

ing partner of an existing partnership assumes liability
for the previous debts of the concern.   He is not bound
for such debts unless he makes himself so by express
agreement, or by such conduct as will raise the pre-
sumption of a special promise.   *Ringo* v. *Wing,* 49 Ark.
457.   The promissory note signed by McDonald Bros.
is the basis of this action.   The law of partnership is but
a branch of the law of principal and agent.   The ground
of liability of one partner for the acts of the other is
that of implied agency within the scope of the partner-
ship.   If Neely was bound by the fact that McDonald
had made payments on the note after he became a mem-
ber of the firm, then he could not even show that he had
not assumed the debts of the old firm.   The credit of a
new member of a firm does not enter into the considera-
tion of the creditors of the old firm, and it would be mani-
festly unjust to hold the new partner liable unless he,
by an express or implied agreement, assumed the debts
of the old firm.   Hence if Neely is liable at all in the
present case, it is upon an express or implied agreement
to pay the debts of the old firm.   If his liability depends
upon making such an agreement, he has the right to
plead the statute of limitations in regard thereto, and
his plea of the statute in bar of his liability could not
be defeated by showing that his partner had made a pay-
ment on the old indebtedness since the time it is claimed
he became liable therefor.   In such cases it will be pre-
sumed that the partner made the payment in discharge
of his own obligation, and the burden of proof would
still be upon the creditor to show that the incoming part-
ner has assumed the debts of the old firm.   Hence this
assignment of error is not well taken.

We find no reversible error in the record, and the
judgment will be affirmed.