CLARK v. LEWIS.

Opinion delivered January 17, 1927.

1. PARTNERSHIP—DISTINGUISHED FROM TRUST.—In a suit between persons who engaged in an oil and gas enterprise, in which the title was taken in the name of one of them as "trustee," the pleadings alone *held* insufficient to show a trust relationship between the parties rather than a partnership relation.       •

2. TRUST—WHEN NOT CREATED.—The fact that an oil and gas lease was taken in the name of one of the parties engaging in the enterprise as trustee did not constitute him a trustee of an express trust, rather than à partner.

3. PARTNERSHIP—WHEN RELATION CREATED.—Parties to an oil and gas enterprise who joined their money in definite ratios, with mutual agreement to share in the gain and loss in proportion to contribution, were partners.

Appeal from Ouachita Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *Elbert Godwin,* for appellant.

*Thos. W. Hardy* and *Powell, Smead & Knox,* for appellee.

WOOD, J. In August, 1923, the plaintiff met the defendant, Dr. Clark, and Judge Gould, and the three of them inspected a well which had just been drilled in and known as the Magnus well. G. M. Martin was the owner of a lease which was an offset to the lease on which the well was located, and the plaintiff, having information that Martin would be willing to sell the lease for a consideration payable entirely out of oil, advised Dr. Clark and Judge Gould of this fact, and, after some discussion, it was agreed that they would acquire the lease and undertake its development. The Magnus well was a rather large well, and the parties believed that the first well on their property would be at least a four-hundred-barrel well, which, as they figured it, would be sufficient to insure sufficient money to carry on the further development of the lease. The most serious problem confronting them was the matter of financing the drilling of the first well, which, according to the then prevailing prices, would cost

$10,000. It was finally decided that Dr. Clark would contribute $5,000, and would own a half interest in the lease, that Judge Gould, or rather his wife, Beulah Gould, would contribute $4,000, and would own a four-tenths interest in the lease, and that the plaintiff, Lewis, would contribute $1,000 and would own a one-tenth interest in the lease. The amounts were paid into the fund, and the lease acquired in the name of Dr. O. W. Clark, trustee. No declaration of trust or other writing evidencing the trust was executed, and the rights and duties of the parties were not defined. It was agreed that Mr. Lewis, who was an experienced oil operator, would operate the lease, and it seems that he employed all the labor, bought the necessary material, and was in full charge of the actual operations. Dr. Clark seemed to hold the purse strings, and all invoices for material and possibly statements of account for labor were sent to him, likewise the payments received from the pipe-line companies were made to him, and he handled all the receipts and disbursements for the enterprise. Just what duties Judge Gould, as the agent of his wife, performed, is not clear. It is admitted that there was no agreement that Dr. Clark would receive any salary, but it is undisputed that Lewis should receive $200 per month for superintending the lease. The evidence shows that this amount was meager and far below the customary salary paid for such work in the field, and Mr. Lewis explains this by saying that it was understood that, in case more than $10,000 was needed, Dr. Clark and Mrs. Gould would advance his portion and charge him no interest.

When, after several months of operation, Lewis could obtain no statement from Clark, he brought this suit for an accounting. He alleged the respective interests of the parties, and alleged that they were to share in all profits and all losses in proportion to their interest. This was admitted by the answer. Plaintiff prayed for the appointment of a master to state an account, and the defendants consented to such an appointment. Dr. Clark presented an account, on which he made no claim for

salary, for traveling expenses, or for interest on money which he claimed to have advanced to the enterprise.

Before the close of the taking of the testimony in the case before the master, Dr. Clark, at the suggestion of his counsel, filed a claim for his services and interest on money he had advanced, and for his expenses. During the taking of his testimony he and his counsel assumed that the relation he sustained toward those associated with him in the development of the lease was that of trustee. This is shown by the questions asked by his counsel and answered by him.

The master filed a report, too voluminous to set forth, in which he states that the testimony shows that O. W. Clark was trustee for himself and his associates in owning and operating the lease. Exceptions were filed by both the plaintiff and the defendant to the master's report, and the court held that the master had erred in stating the account on the theory that the subject-matter of the cause was a trust estate, and directed the master to restate the account between the parties, basing the same on the theory that the relation existing between them was that of partners and not that of a trust estate. The final decree recites as follows: "That the plaintiff, J. I. Lewis, do have and recover of and from O. W. Clark, trustee, and Mrs. Beulah Gould an undivided one-tenth interest in and to all of the net profits derived from the operation and sale of the oil and gas lease covering the following described land, to-wit: The west half of the southeast quarter of section 24, township 15 south, range 17 west, lying south and west of the Missouri Pacific Railroad, in Ouachita County, Arkansas, in keeping with the statement and finding of the amended and substituted report of the master heretofore filed in accordance with the directions of the court heretofore made; that the plaintiff do have and recover of and from said defendants all his costs in and about this cause laid out and expended. To all of which the defendants except, and ask that their exceptions be noted of record, which is accordingly done. Whereupon said defendants

pray an appeal to the Supreme Court of Arkansas, which is granted.''

The above are the facts as stated by counsel for the plaintiff. Counsel for the defendants set forth the complaint and answer, the report of the master and the exceptions thereto filed by the plaintiff and the defendant, and state: ''We deem it unnecessary to abstract the testimony of the various witnesses testifying before the master, for the reason that practically all of said testimony was directed toward the establishment or disallowance or some identification of some item of expense incurred in the operation of the property in question. Inasmuch as the findings of fact by the master are sustained in most instances by a preponderance of the evidence, we shall merely set out the report of the master, and not incumber the brief with an extended abstract of the testimony of the various witnesses.''

1. The appellant concedes that the only issue is, what was the relation existing between the appellant and the appellees with reference to the ownership and operation of the oil and gas lease covering the property described in the complaint? The appellant contends that the property described in the lease was a trust estate, of which he was trustee, and of which appellee was a beneficiary, and the appellee contends that the relationship between the parties was that of partners. The facts as set forth by counsel for the appellee are correct, and the finding of the court that these facts established a partnership between the parties in interest is not against a clear preponderance of the evidence. The appellee alleged in his complaint, in substance, that the appellant trustee had purchased the lease of the lands in controversy, and that, after such purchase, he employed appellee to superintend the drilling operations, and agreed to pay him for his services in the sum of $200 per month and his expenses. The appellee also alleged that he purchased an undivided one-tenth interest in the oil and gas lease and paid the appellant the sum of $1,000 therefor in cash, and that appellee was to share in all profits and losses

in proportion to the amount expended on the lease by the appellant.

The appellant, in his answer, admitted these allegations of the complaint, and alleged that "he holds the legal title to said lease in trust; that, as such trustee, he holds the same for the appellee a one-tenth interest, for himself a five-tenths interest, and for James Gould a four-tenths interest, after all expenses and obligations of the trust are paid and discharged." Appellant contends that these allegations of the pleadings show that the appellant was a trustee of the appellee, and not a partner, and that the parties are bound by the allegations of their pleadings, since neither party asked that the same be amended. But it cannot be determined merely from the allegations of the pleadings whether the relationship between the appellant and the appellee was that of a common-law, or "Massachusetts," trust, or whether it was a partnership. From the allegations of the pleadings alone, the theory that the relationship between the parties was that of a partnership can be as plausibly maintained as that the relation was that of a common law, or "Massachusetts," trust, such as was declared by us to exist in *Betts* v. *Hackathorne,* 159 Ark. 622, 252 S. W. 602. Learned counsel for the appellant contend that the doctrine of that case applies to the pleadings and testimony in this record and establishes the relation between the parties in the case at bar as that of a common-law, or pure business, trust, commonly known as a Massachusetts trust, rather than the relation of a partnership. In that case we said: "The only right accorded to holders of certificates of stock is to share in profits or dividends. They are in the attitude of one of lending money to a partnership for a share of the profits in lieu of interest. A reading of the trust instrument in its entirety has convinced us that the shareholders are not associated with each other and the trustees for the purpose of conducting a business in person or through agents for a profit. There is nothing in the instrument showing an intention

on the part of the shareholders to enter into a copartnership, or an intention on the part of the trustees to cooperate with the shareholders in the conduct of the business. The test, after all, in determining whether a business is a partnership, is to ascertain whether the parties intended one." In the case of *Haskell* v. *Patterson,* 165 Ark. 65, at page 90, 262 S. W. 1002, in construing an instrument of writing, we said: "It is certain that this syndicate is not a pure common-law trust, as was created by the instrument in *Betts* v. *Hackathorne,* 159 Ark. 621-625, 252 S. W. 602. The syndicate created by the instrument under review combines some of the features of a partnership with those of a pure trust, but the predominant features are those of a partnership rather than a pure trust, because the interest-holders have the power to amend the declaration of trust, to remove the trustees without cause and substitute new ones, to continue or to terminate the trust, to require of the trustees a statement of their accounts in dealing with the syndicate and its assets, and to transact any other business pertaining to the properties of the syndicate specified in the call for their meeting. In other words, here the beneficiaries or interest-holders are the masters of the trust, rather than the trustees. Where such is the case the association or syndicate should be classified as a partnership, rather than a pure trust."

Counsel for appellant contend that, under the doctrine announced in *Haskell* v. *Patterson,* above, neither the appellee nor the Goulds had any power or authority to change or to alter the agreement of Clark, the trustee, with reference to his authority; that they had no power to remove him, nor to substitute another in his place as trustee; that they had no power to continue or to terminate the trust; that neither the appellee nor the Goulds had any power or authority to require Clark, as trustee, to make any statement of his accounts in dealing with the trust estate and its assets; that neither appellee nor the Goulds had any power to transact any business whatever pertaining to the properties held by Clark as trustee.

In the above cases the court was construing written instruments purporting to be declarations of trust, and, under the facts developed in those cases, the doctrine above quoted was announced. There was no instrument in the case at bar purporting to create a trust. True, the deed was taken in the name of Clark as trustee, but there was no instrument defining and declaring what his rights and powers, his duties and liabilities, should be. The mere fact that the lease was taken in his name as trustee did not constitute him the trustee of a pure business trust vested with the powers, responsibilities and liabilities of such trustee. In 20 R. C. L., p. 859, § 66, it is said: "Where real estate is acquired in a partnership business, and for its purposes, it is partnership assets, though the legal title be taken in the name of one of the partners. Whether real estate standing in the name of a member of a partnership is, as between the partners, to be treated as partnership property must be determined by ascertaining, from their conduct and course of dealing, their understanding and intention. Here, as in other cases, the intention may be shown by parol, in the absence of written evidence, and where the partners intend that the property shall be partnership assets, the fact that the title is taken in the name of one of the partners will not affect the question. Real estate is not necessarily the individual property of the members of the firm because the title is held by one member in his individual name, and, if several persons purchase real estate as a speculation, they may become partners in respect to it, and the mere fact that the title is taken in the name of one of them, although he executes a mortgage for the unpaid purchase money, does not change the relationship of the parties or the ownership of the property."

Under the oral testimony in this case the trial court was justified in finding that, although the lease was taken in the name of the appellant as trustee, nevertheless it was the intention of the appellant and the appellee and the Goulds, in the development and operation of the lease,

to hold the property as partnership assets. The proof shows that the appellee and the Goulds did transact business pertaining to the operation and development of the lease; that the appellee bought materials and hired labor and was in full charge of the operations, and James Gould, acting for his wife, counseled with Dr. Clark concerning the management, control and disposition of the property. We believe the preponderance of the testimony warrants the conclusion that these parties joined together their money, Dr. Clark contributing one-half, Mrs. Gould two-fifths, and the appellee one-tenth, with the mutual understanding that they should share in the gain and the loss in the purchase and development of the gas and oil lease in the proportion each had contributed. This, under our cases defining partnership, would constitute them partners. In *Stevens* v. *Neely,* 161 Ark. 114, 118, 225 S. W. 562, quoting from *Howell* v. *Harvey,* 5 Ark. 270, we said: "A partnership, in its most significant and extended sense, is a voluntary contract of two or more persons for joining together their money, goods, labor and skill, or either of them, upon an agreement that the gain or loss shall be divided proportionately between them, and having for its object the advancement and protection of fair and open trade. In later cases this court has said that a partnership may be defined as the relation existing between two or more persons who have agreed to carry on a business together, and to share the profits thereof as the joint owners of the business. This court has also held that participating in the profits of a partnership is of itself cogent proof that the person who does so is a partner, and that, if unexplained, this may be conclusive proof. *Johnson* v. *Rothschilds,* 63 Ark. 518; *Herman Kahn Co.* v. *Bowden,* 80 Ark. 23, and cases cited; and *Mehaffy* v. *Wilson,* 138 Ark. 28." See also 20 R. C. L. p. 800, § 2.

The decree is correct, and it is therefore affirmed.