CONSOLIDATED POLICE AND FIREMEN'S PENSION FUND COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CITY OF PASSAIC, A MUNICIPAL CORPORATION, DEFENDANT-RESPOND-ENT.

Argued February 11, 1957—Decided March 25, 1957.

*Mr. Christian Bollermann,* Deputy Attorney-General, argued the cause for the appellant (*Mr. Grover C. Richman, Jr.,* Attorney-General, attorney).

*Mr. William N. Gurtman* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J. On April 1, 1955 the defendant City of Passaic forwarded to the plaintiff Consolidated Police and Firemen's Pension Fund Commission, by mail, its check for $415,508.96, the aggregate principal payments then due to the Commission under *L.* 1952, *c.* 358, *N. J. S. A.* 43:16–1 *et seq.,* approved June 19, 1952, whereby all existing pension funds created by *L.* 1920, *c.* 160 and *chapter* 16 of *Title* 43 of the *Revised Statutes* were consolidated and placed under the administrative control and jurisdiction of the plaintiff thereby established as a "State Commission," as of July 1, 1953; and the question at issue in this proceeding is whether in the particular circumstances the plaintiff Commission may now have interest of $22,411.57 allegedly accrued on the several principal sums making up the aggregate, that is to say, $90,038.39, "called for" July 1, 1953 under section 3 (*b*) and (*c*) of the Consolidated Act of 1952, *N. J. S. A.* 43:16–5 (*b*) and (*c*); $107,555.72, January 1, 1954; $109,796.62, July 1, 1954; and $108,118.23, January 1, 1955.

The issue was submitted to the Superior Court on a stipulation of facts and cross-motions for summary judgment; and the holding was that "(a)cceptance of the principal debt" by the Commission "extinguished its claim for interest." The case is here by our certification of the Commission's pending appeal to the Appellate Division from the consequent judgment in favor of the city.

The city refused compliance with the Commission's demand for the payment of the first of the series of contributions to the consolidated fund thus provided for in the act of 1952, as of July 1, 1953, on the ground that certain provisions of the act, *N. J. S. A.* 43:16-5(*b*)(2) and (*b*)(3) and 43:16-5(*c*), were unconstitutional; and shortly thereafter the city brought a proceeding in the Superior Court to have the act declared void as contrary to the State's organic law, but in the end the challenged provisions were sustained. *City of Passaic v. Consolidated Police and Firemen's Pension Fund Commission,* 18 *N. J.* 137 (1955). The opinion of this court was delivered March 28, 1955. As just said, the city on April 1 ensuing mailed to the Commission its check for the total of the four assessed contributions. On April 7 following, this court's mandate issued pursuant to *R. R.* 1:9-1; and by letter dated that day, the day of the deposit of the city's check for collection, the Attorney-General advised the city's treasurer that the Commission had received the check for $415,508.96, "the principal amount of the deficit installments, the employers contributions and administrative fees due from the City to the fund from July 1, 1953 as detailed" therein, but "since these payments were not made on the dates due, despite the fact that demand was made therefor, lawful interest at the rate of 6% per annum became due thereon and the City is obligated to pay such interest to the Fund." The interest claimed was itemized; and demand for payment was made.

But it was stipulated in the Law Division of the Superior Court, July 3, 1956, that the contributions were "called for" on the given dates; that when the Commission submitted a statement of the "monetary obligations" of the city under the statute, the city advised the Commission of its constitutional challenge, and thereafter, in October 1953, the city "in good faith, instituted suit * * * to have the statute declared unconstitutional and void, and prosecuted said action with all reasonable diligence and dispatch"; that on April 1, 1955, following the judgment of this court on the prior March 28, "defendant remitted to plaintiff its check

for $415,508.96 in full payment of principal on all installments then due," and "Said check was accepted by the plaintiff"; that "no demand for interest on any of the" given "installments was made until April 7, 1955," but the Commission "contends that it is entitled to interest on the various payments, as follows: (a) On the July 1, 1953 payment—from April 1, 1954 to April 1, 1955; (b) On the January 1, 1954 payment—from April 1, 1954 to April 1, 1955; (c) On the July 1, 1954 payment—from July 1, 1954 to April 1, 1955."

And by an order entered November 9, 1956 in the Appellate Division, after appeal taken, the record on appeal was "enlarged" to include an acknowledgment that the "check for $415,508.96 remitted by the City * * * to the plaintiff on April 1, 1955 was received by the plaintiff on April 4, 1955, was deposited for collection on April 7, 1955 and was thereafter honored"; and also that "No demand for interest on any of the installments was made by plaintiff until it set forth said demand in a letter dated April 7, 1955, which letter was not received by defendant until April 8, 1955 or thereafter."

It developed after further inquiry following the interrogation of counsel on the oral argument that on March 23, 1955 the Commission, by letter addressed to the city's treasurer, directed "attention" to "item(s) billed January 1, 1955, due and payable on or before March 31, 1955, which our records indicate remain unpaid as of this date," the "4th semi-annual deficit installment" and "5% of payroll for six month period ended December 31, 1954 (Mun. Share)," aggregating $108,118.23, "as a reminder to enable you to meet the dead-line date" and notice that "On April 1, 1955, outstanding items will be subject to an interest penalty of 6%." A like letter was dispatched to all employers similarly circumstanced.

And it was then also shown that it had been the "policy" of the Commission to allow "grace periods" to the employer units for "a reasonable time"; that the Commission's minutes disclose that in meeting held March 24, 1954 the

Commission discussed "the matter of declaring the City of Passaic delinquent and initiating procedures for collection," and the Secretary "was instructed to obtain an opinion from the Attorney-General with regard to the application of *R. S.* 43:16–5[(*b*)](2), specifically when the first deficit payment is due and further would this Commission be within its assigned jurisdiction if it granted a ninety day period of grace after the January first due date to facilitate the municipal budget operation," and at a meeting on April 28, 1954 the Attorney-General advised the Commission, in writing, that it "may as an administrative matter, and in recognition of the delays incident to municipal budgetary operations, extend for a reasonable time the date of payment beyond January first of any year," a "discretion * * * inherent in the power vested in your Board of Trustees by *N. J. S. A.* 43:16–7, to control and manage the Fund, to control the granting of pensions, and to make all necessary rules and regulations." The minutes also show that in meeting on April 27, 1955 the Commission "agreed that the Attorney-General should demand legal interest" on the City of Passaic's "unpaid billings," and "A policy of assessing the legal rate of interest on all overdue billings was formalized and declared operative"; and at a later meeting, May 26, 1955, the Commission resolved that a "grace period of 30 days be given after July first of each year for the semi-annual collection of the employer 5% item of contribution," and "Payments made after that period of grace would be subject to interest penalty of 6% or the legal rate of interest."

The interest claimed here does not arise out of contract or a contractual status; and the statute establishing the consolidated fund makes no provision for the assessment of interest on delinquent payments as fixed by the Commission, nor does it in specific terms authorize the Commission so to do.

It is fundamental in our law that "interest is no part of a debt unless so stipulated in the contract; that,

usually, it is of statutory origin, and is awarded as damages for the detention of a debt." *Warren Bros. Co. v. Hartford Accident & Indemnity Co.,* 102 *N. J. L.* 616 (*E. & A.* 1926), Parker, J. See *North Hudson R. Co. v. Booraem,* 28 *N. J. Eq.* 593 (*E. & A.* 1877). And interest may be penal in its nature. *Town of Belvidere v. Warren R. R. Co.,* 34 *N. J. L.* 193 (*Sup. Ct.* 1870), Beasley, C. J., dismissed on a procedural ground, 35 *N. J. L.* 584 (*E. & A.* 1871); *In re Edge's Will,* 115 *N. J. Eq.* 408 (*E. & A.* 1934); *Wilentz v. Hendrickson,* 133 *N. J. Eq.* 447 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 244 (*E. & A.* 1944). "Interest" is an "exaction for past due obligations and in essence is a penalty or in the nature of a penalty." *Burlington County v. Martin,* 128 *N. J. L.* 203 (*Sup. Ct.* 1942), affirmed 129 *N. J. L.* 92 (*E. & A.* 1942). Interest does not inhere in a tax as a legal incident. *City of Camden v. Allen,* 26 *N. J. L.* 398 (*Sup. Ct.* 1857). "Interest when allowed is in contemplation of law, damages for the illegal detention of a legitimate claim or indebtedness." *Fidelity Mutual Life Insurance Co. v. Wilkes Barre & Hazelton R. Co.,* 98 *N. J. L.* 507 (*E. & A.* 1923). It is the "computation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention, * * *." *Hiatt v. Brown,* 15 *Wall.* 177, 21 *L. Ed.* 128 (1873). In equity, interest has been allowed "either by way of damages for the detention of a fund, or by way of profit earned or advantage attained." *Stout v. Sutphen,* 132 *N. J. Eq.* 583 (*Ch.* 1943); *Brown v. Home Development Co.,* 129 *N. J. Eq.* 172 (*Ch.* 1941). Chancery considers the equities of the case. *Town of Kearny v. New Jersey Suburban Water Co.,* 110 *N. J. Eq.* 214 (*Ch.* 1932).

"Interest" is not a common-law inheritance. It was denounced by the Mosaic law and by the later ecclesiastical law; and it was rejected by the courts in keeping with the philosophy of the classical and medieval economists from the time of Aristotle that money was but a medium of exchange, inherently barren and nonproductive. 47 *C. J. S., Interest,* § 2; 30 *Am. Jur., Interest, section* 3.

37 *Henry VIII, c.* 9 was the first English statute to sanction interest; the rate was set at 10% per annum. Judicial opinion as to the meaning of this and later statutes was unsettled until Lord Ellenborough laid it down that interest ought to be allowed only where there was a contract for the payment of money on a day certain, as on bills of exchange and promissory notes and other mercantile securities; where there had been an express promise to pay interest; where from the usage of trade or the course of dealing between the parties it was fairly inferable that such was their intention; or where it could be proved that the money had been used and interest actually made. *Calton v. Bragg,* 15 *East.* 223, 104 *Eng. Repr.* 828, 14 *Eng. Rul. Cas.* 541 (1812). See *Cook v. Fowler, L. R.* 7, *H. L.* 27, 14 *Eng. Rul. Cas.* 546 (1874); *Higgins v. Sargent,* 2 *B. & C.* 349; also *Selleck v. French,* 1 *Conn.* 32 (*Sup. Ct. Err.* 1814); *White v. Miller,* 78 *N. Y.* 393 (*Ct. App.* 1879); *Rensselaer Glass Factory v. Reid,* 5 *Cow., N. Y.,* 587 (*Sup. Ct.* 1825). The rule was broadened by subsequent legislation which is of no concern here, except to show that the regulation of interest in England was essentially a statutory process. See *Webster v. British Empire Mutual Life Insurance Co.,* 15 *Ch. D.* 169 (1879).

■■ And in this country interest is generally of statutory origin. Ordinarily, interest is not due as "compensation for the use of money unless by agreement." *Daniels v. Briggs,* 279 *Mass.* 87, 180 *N. E.* 717 (*Sup. Jud. Ct.* 1932). "Interest is allowed either as damages for the wrongful retention of money or personal property, or in accord with a contract for its payment. * * * The law imposes a duty to pay interest from the time payment of a principal is due, or from the time of its wrongful detention. Such payment is in its essence damages for failure to pay the principal at the time agreed upon. * * * But the law neither imposes nor implies an obligation to pay interest from the moment of the creation of a debt, or of a deposit. Such a payment is in its essence a consideration for the use of money. That obligation must arise from special

agreement of the parties. *Ratner v. Hill*, 270 *Mass.* 249, 170 *N. E.* 69 (*Sup. Jud. Ct.* 1930), Rugg, C. J. See also *New England Factors v. Genstil*, 322 *Mass.* 36, 76 *N. E. 2d* 151 (*Sup. Jud. Ct.* 1947).

 It has been held that interest is payable as damages for the improper withholding of funds by a governmental agency only when provided for by statute. *Brophy v. Prudential Insurance Co. of America*, 271 *N. Y.* 644, 3 *N. E. 2d* 464 (*Ct. App.* 1936). But a legislative purpose to allow interest on a particular obligation, either absolutely or in the exercise of a sound discretion, may be found in the nature of the burden imposed and the relative equities between the beneficiaries and those upon whom the obligation has been laid; and in the federal jurisdiction these relative equities are generally weighed "in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obligation, should be fairly compensated for the loss thereby sustained." *Rodgers v. United States*, 332 *U. S.* 371, 68 *S. Ct.* 5, 92 *L. Ed.* 3 (1947). As to "money damages and loss, in the common law sense, to be compensated for by interest," a distinction is there made between a criminal penalty, a "punishment or deterrent and not a revenue-raising device," and a tax which rests on the "basic necessity of the Government to collect a carefully estimated sum of money by a particular date in order to meet its anticipated expenditures," so that it suffers "recoverable damages if a taxpayer fails to pay taxes when due and is therefore equitably entitled to interest." See also *Board of Commissioners of Jackson County v. United States*, 308 *U. S.* 343, 60 *S. Ct.* 285, 94 *L. Ed.* 313 (1939).

 There is no claim of conventional interest here; and the statute establishing the pension fund makes no provision for the payment of interest on the employers' contributions assessed by the Commission in the exercise of its assigned administrative function, nor is the Commission authorized in explicit terms to exact interest on unpaid

installments of the particular class. But it is the Commission's province to administer the pension fund in accordance with sound actuarial principles and experience; and to this end it is empowered, *section 6, N. J. S. A.* 43:16–7, to "make all necessary rules and regulations," not "inconsistent with" the act, and this includes the exaction of interest at a fair rate from the delinquent employers, not only as an administrative sanction, but as the means of fulfilling its essential function, *section 3, N. J. S. A.* 43:16–5, to enforce the timely payment of the individual employer's share of the annual amortization payments "required to bring the fund to a state of actuarial solvency at the end of [the prescribed] thirty-year period." The State, too, is bound by the act to make annual contributions throughout the same period "so as to bring [the fund] to actuarial solvency" at the end of the given period.

We need not consider whether the State's accrued payments may be made subject to interest under like circumstances. It suffices now to say that there was no exercise here of the given administrative discretion until after the installments in question had been paid and accepted by the Commission, when at the meeting held April 27, 1955 the "policy" of "assessing the legal rate of interest on all overdue billings" was "formalized and declared operative." The Commission's letter of March 23, 1955 gave notice to the city that on April 1, 1955 "outstanding items" would be subject to an "interest penalty of 6%," not necessarily a purely compensatory measure.

Thus, we are not met with a statutory provision for interest, nor with a contract for interest, *R. S.* 31:1–1, as amended by *L.* 1953, *c.* 150, and there was not at the time a Commission regulation or known usage or practice for the payment of interest on such assessments; and considerations of equity and fairness counsel against the allowance of interest in such circumstances, more especially since the delay in payments had reference to the period of transition and the resolution of constitutional issues raised in good faith.

■ Moreover, our concern here is not, to repeat, with the conventional interest which becomes an integral part of the debt itself, and so is not discharged by the creditor's acceptance of the principal, nor interest that by statute becomes a part of the obligation, but rather interest that at best is in the nature of damages as an incident to the recovery of the principal which becomes forfeit when the principal itself is paid and accepted by the creditor, even under protest. *Stewart v. Barnes,* 153 *U. S.* 456, 14 *S. Ct.* 849, 38 *L. Ed.* 781 (1894); *Graves v. Saline County,* 104 *F.* 61 (7 *Cir.* 1900); *Nelson v. Chicago Mill & Lumber Corporation,* 76 *F.* 2d 17 (8 *Cir.* 1935); *Davis v. Harrington,* 160 *Mass.* 278, 35 *N. E.* 771 (*Sup. Jud. Ct.* 1894). See *Ring Construction Corporation v. United States,* 209 *F.* 2d 668 (8 *Cir.* 1954), noting that a specific agreement of the parties to the contrary constitutes an exception to the general rule that a "separate suit for interest, as damages, cannot be maintained where the principal debt has been paid." There, the parties had stipulated when the principal was paid that the question of interest remained to be determined; and the finding was that "the parties at all times intended to reserve to the government the right to collect interest notwithstanding the payment of the principal amount due." Such is not the case here. There was no agreement or common intention, when the principal was paid and accepted, to reserve the matter of interest for future determination. And there is no conceivable reason of policy for denying the efficacy of the rule in the particular circumstances.

On the oral argument the city volunteered to pay interest on the full principal sum from April 1, 1955, in accordance with the notice given by the letter of March 23, 1955; and the judgment is modified accordingly and, as so modified, affirmed, but without costs.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, BURLING and JACOBS—4.

*For reversal*—Justice WEINTRAUB—1.