658 A.2d 1257

CONKLIN FARM, PLAINTIFF–RESPONDENT, v. DORIS
LEIBOWITZ, DEFENDANT–APPELLANT.

Argued February 28, 1995—Decided June 14, 1995.

*Michael M. Rosenbaum* argued the cause for appellant (*Budd, Larner, Gross, Rosenbaum, Greenberg & Sade,* attorneys; *Mr. Rosenbaum* and *Michael V. Gilberti,* on the brief).

*Howard C. Trueger* argued the cause for respondent (*Mr. Trueger,* attorney; *Marisa A. Taormina,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal addresses whether an incoming partner is personally liable for interest that accrues on a partnership debt that arose before the incoming partner's admission. Under section 17 of New Jersey's Uniform Partnership Law, *N.J.S.A.* 42:1–1 to –43, (the Act), an incoming partner is liable for preexisting debt only to the extent of partnership property; the incoming partner is not personally liable for preexisting debt. The parties to this appeal differ over whether the interest on a preexisting debt that accrues after the incoming partner's admission is new debt or part of the preexisting debt.

I

In December 1986, Paula Hertzberg, Elliot Leibowitz, and Joel Leibowitz formed, under the Act, a general partnership, LongView Estates (LongView), to acquire from plaintiff Conklin Farm (Conklin) approximately 100 acres of land in the Township of Montville. Paula Hertzberg owned forty percent of LongView; Elliot and Joel Leibowitz owned thirty percent each. They intended to build a residential condominium complex on the property.

On the same day that Paula Hertzberg, Elliot Leibowitz, and Joel Leibowitz formed LongView, LongView executed a promissory note in favor of Conklin for $9 million. The three LongView partners signed the note as partners, and also guaranteed the note personally. The note represented a portion of the purchase price for the land, and was secured by a mortgage on the land. The

note provided for monthly payments of interest only—to accrue at eight and a quarter percent annually for the first year and nine percent thereafter—with the principal and any unpaid interest due on January 15, 1992. Certain interest that accrued would remain unpaid because each month's actual interest payment was limited to half the proceeds that LongView had realized from the sale of fill from the purchased land. The final payment on January 15, 1992, was to include any unpaid interest and the principal amount of $9 million. The note provided that LongView would be liable for any collection costs, including attorney's fees.

On December 16, 1987, LongView executed a Promissory Note, signed by the general partners, Paula Hertzberg, Elliot Leibowitz and Joel Leibowitz, in the maximum amount of $78 million to a predecessor of Chemical Bank. That note was also secured by a mortgage on the property and was personally guaranteed by the three general partners. Those funds were to be used for the construction of the residential condominium complex on the Conklin land and advances were to be made as needed to pay construction expenses. Interest was payable monthly at an annual rate of one percent over the bank's prime lending rate.

On March 15, 1990, Joel Leibowitz assigned his thirty percent interest in LongView to his wife, defendant Doris Leibowitz, who "agree[d] to be bound by all the terms and conditions of the Partnership Agreement dated December 22, 1986." Seventeen months later, on August 30, 1991, Doris assigned the interest back to her husband. During those seventeen months, the entire principal of the Conklin note of $9 million was outstanding, and interest accrued at an annual rate of nine percent.

LongView's condominium project failed, and LongView defaulted on both the Chemical Construction note and the Conklin note. The bank then exercised its right under the note to accelerate payment and declare the entire amount of the note due. In March 1991, LongView filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The partnership continued operation initially as a debtor in possession, and subsequently under a

trustee. 11 *U.S.C.A.* §§ 1107, 1108. In June 1993, the Bankruptcy Court ordered the case to be converted from Chapter 11, reorganization, to Chapter 7, liquidation. Eventually, Paula Hertzberg, Elliot Leibowitz, and Joel Leibowitz filed for personal bankruptcy protection, and all three were discharged of any personal liability on the Chemical and Conklin notes.

## II

Conklin looked to Doris Leibowitz for payment of thirty percent of the interest that accrued on the Conklin note over the seventeen months during which she had held her husband's interest. Conklin sued her in November 1991, claiming that she was *personally* liable for $547,000: thirty percent of the interest that accrued during the seventeen months, plus interest and costs.[1] Conklin thus made two assertions. First, Conklin asserted that Doris Leibowitz was a partner. Second, although it admitted that the principal of the note was preexisting debt, Conklin asserted that the interest that accrued while Doris Leibowitz had been a partner was new debt. Chemical Bank filed a similar complaint, suing both Doris Leibowitz and Paula Hertzberg. The cases were consolidated.

Doris Leibowitz filed a motion for summary judgment on two grounds: first, that she had never been a LongView partner; and, second, that even if she had been a partner, she had been an incoming partner who, under *N.J.S.A.* 42:1–17, was not personally liable for LongView's preexisting debt, including interest. Conklin and Chemical Bank filed cross-motions for summary judgment. For the sole purpose of determining liability for the interest, the parties stipulated that Doris Leibowitz had been a partner.

---

[1] As the opinion below noted, "It is unclear from this record why plaintiff sought only thirty percent of the interest from defendant." 274 *N.J.Super.* 525, 528 n.4 (App.Div.1994). If the interest at issue is indeed new debt, Doris Leibowitz is personally liable for 100% of it under *N.J.S.A.* 42:1–15(b).

Accordingly, the sole issue became whether Doris Leibowitz, as an incoming partner, was personally liable for the interest that had accrued on the preexisting debt while she had been a partner. The trial court held that the interest was part of the preexisting debt, not new debt. The trial court found that *N.J.S.A.* 42:1–17 therefore limited Doris Leibowitz's liability to her interest in partnership property, which, of course, was by then worthless. Holding that Doris Leibowitz was thus not personally liable for the interest, the court granted her motion for summary judgment and denied the plaintiffs' cross-motions.

Conklin filed a Notice of Appeal. Chemical Bank did not appeal, and is no longer a party in this action. The Appellate Division reversed. 274 *N.J.Super.* 525, 644 *A.*2d 687. Ruling that the interest on preexisting debt is new debt, the Appellate Division held that Doris Leibowitz was personally liable for the interest that accrued on the note while she was a partner of LongView.

We granted Doris Leibowitz's petition for certification, 138 *N.J.* 269, 649 *A.*2d 1288 (1994), and now reverse.

### III

We find that the plain language of *N.J.S.A.* 42:1–17 and its legislative history compel the conclusion that Doris Leibowitz, as an incoming partner, is liable for debt to Conklin only to the extent of her interest in partnership assets. Under *N.J.S.A.* 42:1–15(b), each partner is personally liable for the debts and obligations of a partnership. *N.J.S.A.* 42:1–17 defines the liability of new partners entering an existing partnership. That statute provides:

> A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except *that this liability shall be satisfied only out of partnership property.*
>
> [ (Emphasis added).]

Under this statute, although the original partners are personally liable for preexisting debt, the incoming partner's liability for preexisting debt is limited to partnership property.

The source for that statute is section 17 of the Uniform Partnership Act, which New Jersey adopted in 1919. *L.* 1919, *c.* 212, §§ 1–43 (codified at *N.J.S.A.* 42:1–1 to –43). One of the primary goals of the Uniform Partnership Act, and of the New Jersey Legislature in adopting it, was to define the rights of creditors. The rule at common law was that an incoming partner was not liable at all for preexisting debt, and that the entry of the new partner terminated the old partnership and created a new one. Official Comment to Uniform Partnership Act § 17, 6 *U.L.A.* 208 (1969). As a result, creditors of the new partnership had priority over creditors of the old partnership, even though the partners were operating the same business with the same assets.

> The inequitable character of this result has led the courts, where no notice of change of membership is had by the creditors, to be diligent in finding an assumption of liability on the part of the new partnership of the debts of the old partnership.
>
> . . . .
>
> . . . So as to preserve the present law as nearly as possible it is declared that the liability of the incoming partner shall be satisfied only out of partnership property. It, therefore, results that existing and subsequent creditors have equal rights as against partnership property and the separate property of all the previously existing members of the partnership, *while only the subsequent creditors have rights against the separate estate of the newly admitted partner.*
>
> [*Ibid.* (emphasis added).]

· Thus, section 17 of the Uniform Partnership Act struck a compromise: It made incoming partners personally liable for preexisting debts, but only to the extent of their investment in the partnership. As noted in *Citizens Bank of Massachusetts v. Parham–Woodman Medical Assoc's,* 874 *F.Supp.* 705, 709 (E.D.Va.1995),

> Decisions before and after adoption of the UPA suggest the reason why the law restricts an incoming partner's personal liability, a restriction maintained by the Act. Specifically, where a partnership undertakes a debt before a new partner is made, "[t]he credit of [the] new . . . member does not enter into the consideration of the creditors of the old firm, and it would be manifestly unjust to hold the new

partner liable." *Stephens v. Neely,* 161 Ark. 114, 255 S.W. 562, 45 A.L.R. 1236, 1240 (1923).

In addition, section 41(1) of the Uniform Partnership Act, adopted by New Jersey and codified at *N.J.S.A.* 42:1–41(1), provides that when a new partner is admitted and the business continues, the creditors of the previous partnership are also creditors of the partnership continuing the business. The result is that preexisting creditors are protected, but incoming partners are not exposed to personal liability to cover preexisting debts. Accordingly, we find unjustified the Appellate Division's conclusion that section 17 of the Act only incidentally protects incoming partners. 274 *N.J.Super.* at 530, 644 *A.*2d 687.

IV

The Conklin note was executed by the partnership prior to Doris Leibowitz's having any interest in LongView. She did not sign or guarantee payment of that note. Thus, the issue appears resolved by the clear language of *N.J.S.A.* 42:1–17: Because the note was a preexisting debt, and because Doris Leibowitz was an incoming partner, she is not personally liable for the debt. The parties agree that the principal of the note was preexisting debt. However, while Doris Leibowitz argues that the interest that accrued while she was a partner was part of that preexisting debt, Conklin argues that it was new debt that arose each month as it became due. Thus, according to Conklin, Doris Leibowitz is personally liable for the interest that accrued while she was a partner. We disagree.

Other than the opinion below, no reported New Jersey case exists that deals specifically with whether or not interest on a preexisting debt is new debt for purposes of determining an incoming partner's liability under *N.J.S.A.* 42:1–17. However, there are reported New Jersey cases that address the nature of interest, and the trial court adopted the reasoning of those cases.

In rejecting Conklin's argument that interest is new debt, the trial court observed that Conklin's rights, LongView's obligations,

and the entire schedule of interest payments were part of the original note. Thus, the trial court noted:

> There is no case authority of this jurisdiction of which the Court is aware that says that interest should be recognized as having a debt status independent of the underlying obligation to repay which gives rise to the right to claim interest in accordance with the terms of the original note. Based upon the wording of the instruments themselves, it is clear that interest is not a separate and distinct obligation, but rather arises from the written obligation which evidences the debt.

Thus, the trial court reasoned that the preexisting debt encompassed repayment of both the principal and the interest, and that LongView's obligation to pay interest arose when LongView executed the note. Because LongView did so before Doris Leibowitz became a partner, the trial court held that the interest on the note was preexisting debt under *N.J.S.A.* 42:1–17.

Conklin argues, however, that interest is new debt that "arises" at the time it becomes due, rather than at the time that the borrower assumes the original debt. The Appellate Division agreed and, based on that characterization of interest as new debt, held that *N.J.S.A.* 42:1–17 did not apply and that Doris Leibowitz was personally liable for the interest that had accrued while she had been a partner.

The Appellate Division based its decision on two grounds. First, the court found that the main purpose of section 17 of the Uniform Partnership Act was to protect preexisting creditors and that any protection for incoming partners was merely incidental to that main purpose. 274 *N.J.Super.* at 530, 644 *A.*2d 687. However, as detailed in III, *supra,* that conclusion is unjustified. Section 17 struck a compromise that offered protections to both groups. Accordingly, we find that ground unpersuasive. Second, the court adopted Conklin's argument that interest is analogous to rent. We turn now to that analogy.

## V

Conklin argues that just as a rent obligation arises for current use of property, an interest obligation arises for current use of principal. The Appellate Division described the analogy as a

"sound approach," and agreed that "interest is current rent for money and also should be treated as new debt." 274 *N.J.Super.* at 531, 644 *A.*2d 687. We disagree, and we find the rent analogy faulty.

Contractual interest is created by the contract, and is therefore inseparable from the contractual debt. In *Consolidated Police & Firemen's Pension Fund Commission v. City of Passaic,* 23 *N.J.* 645, 656, 130 *A.*2d 377 (1957), we described contractual interest as "an integral part of the debt itself." Indeed, contractual interest does not exist absent provision for it in the debt-creating instrument. As the Appellate Division has noted, "Interest is no part of a debt unless so stipulated in the contract." *Grober v. Kahn,* 88 *N.J.Super.* 343, 350, 212 *A.*2d 384 (1965), *modified on other grounds,* 47 *N.J.* 135, 219 *A.*2d 601 (1966). The interest obligation cannot be a separate debt from the principal obligation because, independent of the contract establishing the principal obligation, there is no obligation to pay interest.

That the interest is not an independent or "new" debt is reflected in the method Conklin used to calculate the claimed liability: Conklin referred to the promissory note executed prior to Doris Leibowitz's admission as a partner. Conklin referred to the preexisting note because no other source exists to define the interest obligation. Conklin's own claim demonstrates that interest is part of the contractual debt, and that the obligation to pay interest on a loan *arises,* if at all, at the time that the parties execute the note or other debt instrument.

Aside from the opinion below, no reported New Jersey cases consider whether the concept of rent as new debt should apply to other obligations under *N.J.S.A.* 42:1–17. However, in interpreting New Jersey's version of the Uniform Partnership Act, it is appropriate to refer to the application of the statute in other states. *N.J.S.A.* 42:1–4(4) ("This chapter shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it.").

Conklin relies primarily on *Ellingson v. Walsh, O'Connor & Barneson*, 15 *Cal.*2d 673, 104 *P.*2d 507 (1940), in which the California Supreme Court held that an incoming partner was personally liable for rent due after his admission, even though he was not a partner when the partnership signed the lease. Significantly, however, the court did *not* hold that the incoming partner was personally liable for the preexisting *lease* obligation. Rather, the court held that section 2411 of California's Civil Code (adopting section 17 of the Uniform Partnership Act) did not shield the incoming partner from personal liability for the *common-law* obligation to pay rent based on current tenancy. That common-law obligation arises with each period of tenancy, and it arises even in the absence of a lease. The court reasoned: "Tenancies in property need not necessarily be created by valid leases.... Such tenancies carry with them the incidental obligation of rent, and the liability therefore arises not from contract but from the relationship of landlord and tenant. The tenant is liable by operation of law." *Ellingson, supra,* 104 *P.*2d at 509. Hence, the common-law obligation to pay rent—entirely independent of the contractual obligation under the lease—arose as a new debt each time the rent became due. *See Housing Auth. of East Orange v. Leff,* 125 *N.J.Super.* 425, 434, 311 *A.*2d 213 (Law Div.1973) (holding that liability for rent "may arise from occupation under proper circumstances").

What Conklin overlooks is the *Ellingson* court's explicit distinction between rent and interest. The court pointedly contrasted rent with a transaction in which "the only obligation of the partnership ... was one which arose prior to the [incoming partner's] admission to the firm." *Ellingson, supra,* 104 *P.*2d at 508. The court offered contractual interest as the paradigm of such a purely preexisting debt: "For example, if a promissory note had been executed by the partnership for a consideration then passing to it, the obligation would have arisen at the time of the execution of the note and the case would plainly be within" section 17 of the Uniform Partnership Act. *Ibid. Ellingson's* ruling rested purely on the common law obligation to pay rent;

absent such a common law obligation to pay the debt, the debt arises only at the execution of the note.

Because there is no obligation to pay interest independent of the promissory note, Conklin's rent analogy fails. Since the obligation to pay interest arises only as a result of the original loan instrument, interest, unlike rent, cannot be "new" debt. Conklin also relies on *Barbro Realty Co. v. Newburger*, 53 *A.D.*2d 34, 385 *N.Y.S.*2d 68 (1976), in which the holding of the New York Supreme Court, Appellate Division, was substantially similar to that in *Ellingson.* The *Barbro* court cited *Ellingson,* as well as an earlier New York case, *In re Ryan,* 294 *N.Y.* 85, 60 *N.E.*2d 817 (1945).

*Ryan* raises another crucial difference between rent and interest: Whereas all obligations and entitlements related to a loan are generally fixed at the time of executing the debt instrument, the same is not true of a lease. The lease at issue in *Ryan* explicitly provided that the landlord could cancel the lease at any time if the building were sold, and that the tenant would thereafter be relieved of the obligation to pay rent. *Id.,* 60 *N.E.*2d at 821. Thus, in some situations, "the stipulated rent payable in the future by a lessee for the right to occupy the leased premises might never become due." *Ibid.* Although the *Ryan* court restricted its holding to the facts before it, it is uncontestable that the obligation to pay rent under a lease is contingent on the landlord's fulfilling the *continuing* obligation to allow occupancy by the tenant. As the Law Division has held, "a lease, whether it be for a residence or for commercial purposes, is a set of mutually dependent covenants; i.e. the tenant's covenant to pay rent is dependent (among other things) on the landlord's covenant permitting the tenant the quiet enjoyment of the leased premises." *Westrich v. McBride,* 204 *N.J.Super.* 550, 556, 499 *A.*2d 546 (1984). That characteristic of leases justifies the view that rent, even under a lease, may not arise as debt until its due date.

That characteristic also significantly differentiates a lease from a promissory note. The note from LongView in favor of Conklin provided for only one obligation on Conklin's part: the conveyance

of the property in return for LongView's promise to pay $9 million plus interest. On execution of the deed, Conklin had fulfilled its obligations. LongView's obligation to repay principal and to pay interest thus arose at the time that the note was executed. Unlike a tenant's obligation to pay rent, LongView's obligation to pay interest was not contingent on any further performance by Conklin.

Consistent with our analysis, two federal district court cases have specifically disapproved the analogy of rent to payments on a promissory note for the purpose of deciding what is new debt under section 17 of the Uniform Partnership Act. In *Plaza Realty Investors v. Bailey*, 484 *F.Supp.* 335 (S.D.N.Y.1979), the court specifically rejected the plaintiff's attempt to apply the logic of *Barbro, supra*, 385 *N.Y.S.*2d 68, to a case involving a promissory note. The lender in *Plaza Realty* argued that the obligation to repay a promissory note arose as a debt not when the note was executed but when the payment became due. The court observed that the lender had cited *Barbro*, "wherein the court held that rent as a debt 'arose' when it became due, not when the lease was signed, but plaintiff has cited no cases which have extended this principle to payments made on promissory notes." *Plaza Realty, supra*, 484 *F.Supp.* at 352. As Conklin points out, *Plaza Realty* is not directly on point because it deals with repayment of principal, not interest. Nonetheless, we note the *Plaza Realty* court's refusal to extend the *Ellingson* and *Barbro* reasoning beyond the rent context.

In *Citizens Bank, supra*, 874 *F.Supp.* 705, the court held that the concept of rent as new debt could not be extended to repayment of advances on a loan that the lender had made after the admission of the incoming partners. Under the terms of the $2 million construction loan at issue, the lender was to make advances from time to time during the construction. The lender advanced almost $1.5 million before the new partners' admission, and about $0.5 million after their admission. The partnership defaulted, and those who had been partners when the note had been executed

filed for personal bankruptcy. Arguing that the incoming part-
ners were personally liable for the advances made after their
admission, the lender relied on *Ellingson* and on the opinion
below. The court in *Citizens Bank* rejected the rent analogy, and
correctly articulated why the Appellate Division in *Conklin Farm
v. Leibowitz,* 274 *N.J.Super.* 525, 644 *A.*2d 687 (1994) had erred in
accepting that analogy:

> The *Conklin Farm* court missed the important point of *Ellingson.* It may be
> that interest on a note in a general sense is similar to "rent" for money. However,
> there is no principle of negotiable instruments law that creates an obligation to pay
> that "rent" independent of the contract. Moreover, the fact that a new partner
> receives a benefit from a contract entered before her admission does not affect the
> time at which the contractual obligation arose. For these reasons, the logic of
> *Conklin Farm* is unpersuasive.
>
> [*Citizens Bank, supra,* 874 *F.Supp.* at 710.]

We agree.

Although *Citizens Bank* involves repayment of advances of
principal—rather than payment of interest—the case focuses on
the decisive issue before this court: Payment of interest, like
repayment of advances, is an obligation that arises at the time the
debt instrument is executed. The *Citizens Bank* court aptly noted
the inappropriateness of the analogy to rent: "in *Ellingson,* the
[rent] liability imposed on the incoming partner was created not
by the contract, which predated his admission, but by operation of
basic principles of property law that impose liability for tenancy
with or without a contract." *Citizens Bank, supra,* 874 *F.Supp.* at
709. We likewise find the analogy of rent to contractual interest
to be unpersuasive.

Moreover, there is no prejudice to Conklin in the fact that it
may look to only the original partners for payment of the preexist-
ing debt and interest. In executing the note, Conklin considered
the personal credit of only Paula Hertzberg, Elliot Leibowitz, and
Joel Leibowitz, all of whom guaranteed the loan. Conklin did not
rely on the personal credit of Doris Leibowitz. When lenders loan
money, they rely on the financial statements of the general
partners, and not of some future, unknown general partner.
Furthermore, lenders can protect themselves by providing in the

promissory note that if new partners enter the partnership, the partnership will terminate, and the note will be accelerated unless the new partner agrees to sign or guarantee the note.

## VI

We find that contractual interest is not new debt. It is not a separate and distinct obligation, but is an integral part of the debt itself. *Consolidated Police, supra,* 23 *N.J.* at 656, 130 *A.2d* 377. Accordingly, LongView's obligation to pay interest arose when it executed the Conklin note, before Doris Leibowitz became a partner. Hence, the interest on the note was preexisting debt under *N.J.S.A.* 42:1–17, and Doris Leibowitz is not personally liable for its payment.

The judgment of the Appellate Division is reversed.

*For reversal* —Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.