**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0425-24

KINGSLEY E. AISEWOMHION,

    Plaintiff-Appellant,

v.

RAHUL GOEL,

    Defendant-Respondent.

_____

        Submitted January 27, 2026 – Decided June 1, 2026

        Before Judges Rose and Torregrossa-O'Connor.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket Nos. L-0716-21 and L-1211-21.

        Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

        Ofeck & Heinze, LLP, attorneys for respondent (Patrick J. Jordan, on the brief).

PER CURIAM

This matter returns to us following a remand ordered in our previous opinion. Aisewomhion v. Goel, No. A-2550-22 (App. Div. Jul. 1, 2024). In that case, we vacated the trial court's order dismissing, after a bench trial, plaintiff Kingsley E. Aisewomhion's landlord-tenant based claims against defendant Raul Goel, and remanded the matter for the limited purpose of allowing plaintiff to supplement the trial record with testimony from an additional witness and providing both parties the opportunity for summations based on the expanded trial record. Plaintiff now appeals from the August 19, 2024 Law Division order after completion of the trial on remand, again finding in favor of defendant and dismissing plaintiff's claims, concluding the relationship between the parties was a business arrangement, not a tenancy. Plaintiff also appeals from the September 27, 2024 order denying reconsideration. We affirm.

I.

In December 2020, plaintiff filed a self-represented complaint against defendant alleging wrongful distraint,[1] and seeking return of property and monetary damages, claiming a landlord-tenant relationship with defendant.

---

[1] The trial court interpreted plaintiff's complaint more broadly as seeking a landlord-tenant-based remedy under the Anti-Eviction Act (the Act), N.J.S.A. 2A:18-61.1 to -61.12.

A-0425-24

Plaintiff essentially alleged defendant unlawfully evicted him from several residential properties defendant owned in Newark.

Defendant claimed his relationship with plaintiff was a business arrangement, not a tenancy. He contended plaintiff, although formerly a tenant, at all relevant times thereafter managed several of defendant's properties as Airbnb units. Thus, defendant counterclaimed, seeking to compel plaintiff's payment of "outstanding monthly fees" he alleged plaintiff owed to him pursuant to their business arrangement.

The trial followed, spanning several days over several years, and concluded on August 12, 2024, after additional testimony and summations took place in accordance with our remand order. We derive the following summary of facts from the trial record, pre- and post-remand, as presented by plaintiff on appeal.[2]

---

[2] In support of his appeal, plaintiff provided an incomplete trial record, omitting transcripts of testimony from several trial days, including, it appears, his own trial testimony and testimony from his sister. According to the trial court's statement on the record on February 2, 2023, the trial had already taken place over several "trial days," including August 4, 2022, September 7, 2022, and December 12, 2022, and the court represented it heard from "several witnesses for both sides." However, plaintiff includes on appeal the transcripts of trial proceedings from only September 7, 2022, February 2, 2023, and August 12, 2024, containing the testimony of defendant, and two of plaintiff's witnesses, Kalu Kokor and Adishala Idowu.

Again, it is our understanding the court heard from several witnesses including plaintiff before defendant testified on September 7, 2022. We derive from plaintiff's questioning and arguments his contention this was a landlord-tenant relationship and defendant, his landlord, wrongfully evicted him. Plaintiff clearly disputed defendant's characterization of their arrangement as a business relationship.

Defendant testified and explained plaintiff previously rented an apartment from defendant located on New Street in Newark in 2018, memorialized by a one-year lease agreement executed by the parties. Defendant testified plaintiff was not using the property as an Airbnb during this time.

---

In response to our repeated requests for any missing transcripts, defendant confirmed days of trial proceedings were not provided, citing the following missing dates: June 2, 2021; July 2, 2021; July 15, 2021; March 11, 2022; July 18, 2022; August 4, 2022; September 7, 2022; September 13, 2022; December 12, 2022; August 7, 2024. By letter dated April 6, 2026, plaintiff represented "[T]here are no missing transcripts available for transcription," and "this appeal is ready for determination by the court and can be decided based on the present record and the filed briefs of both parties."

Having provided the parties several opportunities to supplement the record with the missing transcripts and state their respective positions concerning the partial record, we address plaintiff's appeal on the record plaintiff presented in accordance with his request we do so. See R. 2:5-3(b) (requiring the appellant, with certain exceptions to submit transcripts of "the entire proceedings in the court . . . from which the appeal is taken").

According to defendant, the parties then agreed plaintiff would "host" an "Airbnb business" utilizing several of defendant's Newark properties. There were no signed leases or written memorialization of the parties' arrangement, but defendant testified they agreed plaintiff would pay defendant a set monthly fee for each of the properties and, in exchange, plaintiff would retain any excess fees as payment or a "bonus" for managing the properties. According to defendant, the arrangement provided "incentive" for plaintiff. Defendant explained, by 2020, plaintiff was managing seven of defendant's properties as Airbnbs.

Defendant characterized the parties' relationship as "giv[ing] [plaintiff] buildings to manage," with the expectation plaintiff would manage the property in accordance with Airbnb "protocols." Defendant further explained plaintiff was responsible for any damage to and cleaning of the property. Defendant indicated, "this is why [plaintiff] was paid that salary."[3] Defendant described the agreement as "month-to-month," which gave defendant the ability to terminate the agreement if "any problems" arose.

---

[3] Defendant's use of the term "salary" here refers to plaintiff's profits earned from listing the properties on Airbnb.

A-0425-24

In late 2020, defendant complained he discovered filthy conditions and illegal activity in the properties. Defendant also learned plaintiff was residing in one of the properties on Longworth Street. According to defendant, "[plaintiff] was not supposed to be living in any building whatsoever. . . . [H]e was supposed to be managing based on the Airbnb business only." Defendant testified families and children were living at the various locations, "which was not supposed to be happening. . . . [T]he apartments were rented out as a rooming boarding house." Defendant explained plaintiff was "renting . . . the properties, outside Airbnb, receiving cash." He described the condition of the properties as "bad," citing "broken" items, "infestation[s]," and suspected drug use in the buildings.

Upon this discovery, defendant sent plaintiff a written "Notice Terminating Employment/Agency/License." The notice advised defendant "immediately terminat[ed]" "any right of access to, license for, or agreement or contract for agency or employment [plaintiff] may have . . . (as 'host,' 'property manager,' 'superintendent,' or otherwise)." The notice further demanded return of any keys and demanded plaintiff refrain from any involvement or "interference with the management of the premises." It directed plaintiff to

6

cease all communication with occupants or guests of the premises, and warned plaintiff's presence on the property would be deemed a "trespass."

Defendant notified the police regarding the unauthorized occupants in his buildings, and the occupants were removed. Plaintiff remained in one of defendant's buildings for months after receiving the notice, but was eventually removed from the property. Defendant claimed plaintiff left the property severely damaged, after "trash[ing] the whole building" by breaking the faucets and "water meters" on the second floor and letting water flood the building. Defendant explained the damage required defendant to pay a "thirty-seven-thousand-dollar [water] bill."

Plaintiff then presented testimony from Kalu Kokor. Kokor testified he met plaintiff in 2016 and told plaintiff he was looking to "expand" his Airbnb business. The two agreed to search for an apartment to "expand the business." Kokor explained, in 2018, he brought plaintiff to meet with defendant and introduced plaintiff as Kokor's business partner. Kokor testified he and plaintiff explained they sought to rent an apartment from defendant for use as an Airbnb. According to Kokor, defendant agreed to rent property to plaintiff to use as an Airbnb, and plaintiff signed a "lease" for a property on New Street. Kokor stated plaintiff never resided at the New Street location during the duration of the lease.

A-0425-24

Kokor further testified that, when plaintiff signed the lease for New Street, the apartment was not furnished and plaintiff had to purchase furniture.

When asked about the single-family dwelling restriction in the New Street lease between plaintiff and defendant;[4] he explained, "[defendant] told us that no landlord will give you a lease and write it officially that it's for Airbnb." Kokor confirmed plaintiff and defendant agreed to the use of the New Street property for Airbnb purposes.

The next trial transcript provided on appeal by plaintiff was from continued trial proceedings on February 2, 2023, at which plaintiff failed to appear. Plaintiff's witness, Adishala Idowu, appeared. The court noted that beyond Idowu's possible testimony, "the presentation of witnesses and evidence was complete." The court then found in favor of defendant and placed its findings of fact and conclusions of law on the record.

The court summarized "[plaintiff]'s argument was that he was a tenant at the properties. . . . And that in order to terminate his rights, landlord/tenant proceedings would have to be implemented." Defendant contended his relationship with plaintiff was not a tenancy but a business arrangement, and he

---

[4] The lease provided: "The premises shall be used and occupied by the tenant exclusively as a private single-family dwelling, and no part of the premises shall be used . . . for the purpose of carrying on any business, profession, or trade."

A-0425-24

lawfully terminated the arrangement based upon plaintiff's misuse of the properties.

The court credited defendant's testimony over plaintiff's. It found defendant's testimony more consistent with Kokor's, which it similarly deemed credible.

The court then concluded "this was not a landlord/tenant relationship that had been entered into with [plaintiff]. . . . [I]t was more of a business-type relationship where [plaintiff] was involved in managing . . . the properties. But he wasn't a tenant." Finding in favor of defendant, the court found no lease arrangement and explained, "[T]here w[ere] no . . . rights that . . . [plaintiff] had acquired in the properties, such as would allow the [c]ourt to find that he was improperly locked out of any properties . . . . Or that he . . . would have the right to reside in . . . any of the properties" once the arrangement with defendant concluded.[5] On February 9, 2023, the court entered an order in favor of defendant and consistent with its decision on the record.

---

[5] The court clarified, based on "different matters that have been filed," the court was limiting its holding to "the rights in the properties themselves." These "different matters" are not before us on appeal or addressed by the parties in their briefs.

After the court denied plaintiff's motion to reinstate the trial and denied reconsideration of that decision, we granted plaintiff's appeal, vacated the orders, and "remand[ed] the matter for the limited purpose of continuing the trial for presentation of Idowu's testimony and summations." Aisewomhion, slip op. at 12. We declined to address the nature of plaintiff's relationship with defendant. Ibid.

After remand, the trial continued on August 12, 2024. Idowu testified about his relationship with defendant. He explained first renting a room from defendant in 2019. Idowu explained he was not a property manager for defendant, but would instead collect rents from defendant's other tenants and "deliver[]" rents to defendant.

When asked if he knew plaintiff was "renting [defendant's] properties," Idowu testified defendant told him he found another person who "is so good with Air[bnb]," and was allowing that person to operate out of some of defendant's properties for that purpose. Idowu testified he brought a separate action against defendant and agreed a court determined "Idowu [wa]s an agent of the defendant authorized to rent out apartments in whole or in part owned by the defen[dant], authorized to collect rent for the same, and allowed to keep some of that rent for

himself at times." Idowu clarified defendant still expected him to pay defendant a predetermined monthly amount regardless of whether any rooms were rented.

During summations, defendant again contended plaintiff was not a tenant, arguing "the agent for procuring . . . occupancies isn't a tenant. They're not residing there. They're not the type of tenant contemplated by the . . . Act." Defendant described the arrangement as "a business relationship where these parties were permitted to have access to these buildings and rent out the units and/or rooms and collect the margin."

Plaintiff argued he was a tenant, and "not an agent . . . under [defendant]" but rather, "an Air[bnb] agent for [him]self." Plaintiff indicated he met defendant monthly to discuss Airbnb bookings and "how much was made." Plaintiff explained, in some months he would make significant profit and in others, he did not make enough to cover "rent." Plaintiff also cited text messages, admitted at trial, referencing a New Street security deposit, which he asserted was indicative of a tenancy.

The court then rendered oral findings, again concluding the relationship between the parties "was a business relationship, not a tenancy," referencing and confirming its February 2, 2023 decision. The court accepted Kokor's testimony that the parties' relationship began when "[plaintiff] wanted to start engaging in

11

Air[bnb] arrangements." Noting not all tenancies require leases, the court explained Kokor's testimony aligned with defendant's, describing "a business-type relationship where [defendant] had a portfolio of real estate, and [plaintiff] was going to Air[bnb] out portions of that and operate that as a business."

The court also found Idowu credible, but noted Idowu's testimony, peculiar to his separate arrangement with defendant, did not change its impression that the parties were engaged in a "business joint venture" and not a "landlord-tenant relationship." On August 19, 2024, the court entered an order in favor of defendant, consistent with its findings on the record.

Plaintiff moved for reconsideration, reiterating his prior arguments and alleging flaws in the court's findings and attempting to undermine the credibility findings regarding defendant. In a September 27, 2024 order, the court denied reconsideration. The court found plaintiff made no showing its decision was "palpably incorrect" or failed to consider "competent and probative evidence."

## II.

On appeal, plaintiff reprises his arguments, contending the court erred in finding no landlord-tenant relationship existed between the parties. He further contends the court improperly denied his motion for reconsideration because there was "an inconsistenc[y] in the defendant's testimony . . . in which the

12

defendant referred to an unknown individual acting as an Airbnb host for a property, later characterized as being involved in illegal activities" and "[t]here was inadequate evidence indicating that [plaintiff] was seeking employment from [defendant]."

Defendant characterizes plaintiff's arguments as "mere dissatisfaction of the trial [c]ourt's decision" because "plaintiff's witnesses offered testimony supporting defendant's construction of the parties' relationship." Defendant contends that plaintiff's brief challenging the trial court's denial of reconsideration "is rife with conclusory statements" and fails to show a basis for vacating the court's decision.

Findings of a trial judge after a bench trial are "considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974). Ordinarily, "[t]he scope of [our] review of a trial court's fact-finding function is limited." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 152 N.J. 394, 411 (1998)). "[W]e defer to the trial court's credibility determinations because it 'hears the case, sees and observes the witnesses, and hears them testify.'" City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

A-0425-24

We also review with deference a trial court's denial of a motion for reconsideration under Rule 4:49-2 and disturb those findings only upon an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). However, we apply a de novo standard to review questions of law. Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002).

Although plaintiff's self-represented complaint alleged wrongful distraint, the trial court, without objection from the parties, framed the issue for trial as "whether there had been a landlord-tenant relationship." Thus, the court considered whether plaintiff was entitled to the protections of landlord-tenant law, and determined he was not.

Indeed, generally, residential tenants are protected against wrongful eviction by a landlord under the Act. See Hale v. Farrakhan, 390 N.J. Super. 335, 342 (App. Div. 2007) ("[T]he specific purpose of the wrongful eviction causes of action created by N.J.S.A. 2:18-61.6 is to protect tenants against pretextual evictions."); see also N.J.S.A. 2A:18-61.1 (stating that "[n]o lessee or tenant or the assigns, under-tenants or legal representatives of such lessee or tenant" may be removed except for a showing of certain grounds). The Act "comprehensively regulates the grounds on which a residential tenant may be evicted." RWB Newton Assocs. v. Gunn, 224 N.J. Super. 704, 709 (App. Div.

1988) (emphasis added); see also 224 Jefferson St. Condo. Ass'n v. Paige, 346 N.J. Super. 379, 383 (App. Div. 2002) (noting "[t]he Act affords 'residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction . . . and thereby to protect them from involuntary displacement'" (omission in original)).  Further, the Act expressly states, "[t]his act shall not apply to a hotel, motel or other guest house, or part thereof, rented to a transient guest or seasonal tenant."  N.J.S.A. 2A:18-59.2.

One pathway to proving a tenancy is through an actual lease agreement. See Delmat Corp. v. Kahn, 147 N.J. Super. 293, 297 (App. Div. 1977).  "[A] lease is a contract that creates rights and obligations," including a "temporary grant of possession."  Town of Kearney v. Discount City of Old Bridge, Inc., 205 N.J. 386, 411 (2011).  "Enforceable agreements also may be implied in fact from the conduct of the parties."  Young v. Savinon, 201 N.J. Super. 1, 7-8 (App. Div. 1985).

Here, there was no new written lease agreement or other written contract between the parties granting plaintiff legal possession of defendant's properties after the conclusion of the New Street lease in 2019.  To the contrary, as the court found, the record supports the conclusion the parties then entered into a business arrangement whereby plaintiff would "manage" defendant's properties

15

as Airbnb properties, acting as the host. Defendant's testimony, and on this subject Kokor's, confirmed the business-related nature and purpose of the parties' new arrangement. The trial court observed the witnesses and made sufficient credibility findings to which we defer. Whatever the precise relationship definition, we discern no abuse of discretion in the court's determining this was not a landlord-tenant relationship subject to the laws of tenancy.

We recognize, as did the trial court, "[t]enancies in property need not necessarily be created by valid leases . . . . [T]he liability therefore arises not from contract but from the relationship of landlord and tenant." Conklin Farm v. Leibowitz, 140 N.J. 417, 426 (1995). Indeed, occupants of a premises can become tenants-in-fact under the Act, absent an express agreement, when (1) they have continuously resided at the premises; (2) they have "been . . . substantial contributor[s] toward satisfaction of the tenancy's financial obligations"; and (3) their "contribution has been acknowledged and acquiesced to by [the] landlord." Maglies v. Est. of Guy, 193 N.J. 108, 126 (2007). Here, however, we note the record does not support plaintiff's status as a tenant-in-fact.

A-0425-24

Critically, the record before us reflects, after the conclusion of the first New Street lease term, plaintiff never lawfully resided at any of defendant's properties, other than the Longworth Street property, where he resided at one point without authorization from defendant. Thus, plaintiff failed to show continuous occupancy of any of the properties within the meaning of the Act or any acceptance or acquiescence by defendant to his unlawful occupation of the Longworth Street premises. Instead, when defendant learned plaintiff personally occupied the Longworth property, he promptly took action to have defendant removed for trespassing. Accordingly, we will not disturb the trial court's determination plaintiff was not a tenant, entitled to the protections of the Act or any other tenant safeguard, but was, instead, a business associate related to defendant's properties.

Finding no error, we similarly conclude the court properly denied reconsideration, as plaintiff failed to show the court's decision was "based upon a palpably incorrect or irrational basis, or . . . failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0425-24

17